UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOHN STEVENS, :
:
Plaintiff : CIVIL ACTION NO. 3:20-1911
:
v. : (JUDGE MANNION)
:
JESSI SULLUM, et al., :
:
Defendants :

**MEMORANDUM**

I. **BACKGROUND**

John Stevens, a chiropractor, was arrested and charged with various counts of sexual assault regarding an acquaintance and one of his patients, Jessi Sullum, by detectives of the Lackawanna County District Attorney's ("DA") Office. The charges were dismissed prior to trial. Stevens has filed the instant civil rights action pursuant to 42 U.S.C. §1983, naming as defendants Sullum, Michelle Mancuso, Chris Kolcharno, Lackawanna County DA Mark Powell, and First Assistant District Attorney ("ADA") Judy Price. Also named as a defendant, based upon municipal liability under Monell v. Department of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018 (1978), is Lackawanna County. Mancuso, Kolcharno, Powell and Price shall hereinafter be referred to as "DA defendants."

In his amended complaint, (Doc. 9), Stevens asserts claims under §1983 for malicious prosecution, abuse of process, false arrest, and false imprisonment, and he alleges violations of his rights under the 4th, 5th and 14th Amendments. (Counts I-IV). Stevens also raises a claim for conspiracy to violate his civil rights under §1985. (Count V). Additionally, Stevens raises state law claims against Sullum for malicious prosecution and abuse of process, as well as a state law claim for tortious interference with contractual relations against Powell. (Counts VI-VIII).

On December 30, 2020, the County and DA defendants filed a motion to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(6), arguing, in part, that they are entitled to absolute and qualified immunity. (Doc. 11). Also, on December 30, 2020, Sullum filed a Rule 12(b)(6) motion to dismiss. (Doc. 13). Those motions will be handled in a separate Memorandum and Order of the court.

On January 8, 2021, the County and DA defendants filed a motion for a protective order, pursuant Fed.R.Civ.P. 26(c)(1), seeking the court to stay discovery pending a decision on their motion to dismiss based on their contentions that they are entitled to immunity. (Doc. 16).

Both sides filed Exhibits regarding the motion for a protective order, including copies of Stevens' subpoenas to conduct depositions on January 21, 2021. One of the subpoenas was directed to Sara Varela, who was the Assistant District Attorney assigned to prosecute Stevens in the underlying criminal case.

On January 14, 2021, the court denied the defendants' motion for protective order staying discovery. (Doc. 24). The court also dismissed with prejudice Stevens' claims under §1983 against the DA defendants to the extent that they were asserted against them in their official capacity, Stevens' claims for punitive damages against Lackawanna County and against the DA defendants in their official capacity, and Stevens' claims for violations of his rights under the 5th Amendment. The court also directed that discovery shall continue pursuant to the court's scheduling order. (Doc. 22). Subsequently, the parties proceeded with discovery and depositions were conducted.

During Plaintiff's deposition of Ms. Varela on January 26, 2021, counsel for Varela objected to the questioning of her by Plaintiff's counsel regarding certain notes she created while she was prosecuting the criminal case against Stevens in the Lackawanna County Court, on the basis that her notes were privileged. The notes described conversations between Varela and her superiors, including First Assistant DA Price, about Stevens' case. Valera's notes also referenced discussions between ADA Price and defendant DA Powell about the matter. The parties then contacted the court regarding the objection of Varela's counsel. The court directed Plaintiff and Varela's counsel to file letter briefs regarding the issue of whether Varela's notes were protected by any privilege.

On January 29, 2021, Stevens filed a memorandum with respect to the objection to the use of Ms. Varela's notes at her deposition. (Doc. 25). On February 16, 2021, counsel for Ms. Varela submitted a letter brief discussing

the work product privilege, deliberative process privilege, and attorney-client privilege bases for his objection. (Doc. 28).

II. DISCUSSION

At issue is whether the court should sustain the objection by Ms. Varela's counsel regarding the use of her notes during her deposition on the grounds that the notes are privileged. Neither party has indicated how Plaintiff's counsel obtained Valera's notes. However, insofar as counsel for Valera requests this court to conduct a hearing and seemingly an investigation into how Plaintiff's counsel received the notes, this request is denied. (*See* Doc. 28, pg. 2). Counsel is free to pursue this matter in the County Court if it is believed a violation of state law occurred. Also, counsel's request for oral argument on the asserted privileges is denied, as the court finds that the written submissions are sufficient. (Id.)

**A. Work Product Privilege**

Under Federal Rule of Civil Procedure 26(b)(3)(A), materials "prepared in anticipation of litigation or for trial by or for another party or its representative" are ordinarily shielded from discovery. This privilege, also recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), applies to criminal as well as civil litigation. *United States v. Nobles*, 422 U.S. 225, 238 (1975). Further, the privilege extends not only to materials prepared for the present litigation, but also to those "prepared for *any*

4

litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983).

The party claiming the privilege bears the burden of demonstrating that the materials are work product. *Conoco, Inc. v. U.S. Dep't of Just.*, 687 F.2d 724, 730 (3d Cir. 1982). In determining whether materials were prepared in anticipation of litigation, courts ask whether "the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *U.S. v. Rockwell Int'l*, 897 F.2d. 1255, 1266 (3d. Cir. 1990) (quoting *In re Grand Jury Proc.*, 604 F.2d 798, 803 (3d Cir. 1979)). This standard has been equated to the question (sometimes characterized as a separate, additional test, *Bolus v. Carnicella*, 2020 U.S. Dist. LEXIS 206873, at *10 n.50 (M.D. Pa. Nov. 5, 2020) (citing *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D. N.J. 2008))) of whether "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Rockwell Int'l*, 897 F.2d at 1266. Additionally, courts have found that the work product privilege is not available to prosecutors in a prior criminal investigation objecting to discovery of work product in a related civil case. *Wong v. Thomas*, 238 F.R.D. 548, 551 (D. N.J. 2007).

Although Varela was a representative of the Commonwealth in the criminal case as the prosecutor, she was not acting as a representative of the defendant DAs in this case by creating the notes. Moreover, she did not create the notes *for* the defendant DAs in this case: she created them only to document her own reactions and impressions to discussions with other

5

ADAs, including her supervisor. In addition, the notes were not created for the purpose of aiding in possible future litigation, rather, the notes simply expressed Valera's beliefs with respect to the defendant DAs' actions in the criminal case. Further, as a prosecutor in the underlying criminal case, the privilege is not available to Valera to protect against discovery of her materials in this civil case. Therefore, the usual requirements for work product privilege protection are not satisfied.

Some courts, however, have extended the work product privilege to protect materials produced by non-parties, if disclosing the materials would interfere with the *Hickman* purposes of the privilege: protecting attorneys' ability to prepare their cases, preventing opposing parties from free-loading off the other's work, and avoiding "disruption of ongoing litigation." *In re Student Fin. Corp.*, 2006 WL3484387, at *11-12 (E.D. Pa. 2006). Here, disclosing Valera's notes would not implicate these purposes, because the notes do not contain Valera's trial preparation formulations, they do not represent legal work that the Plaintiff could utilize in his own preparation for his instant case, and they are related to a terminated criminal case. Therefore, the work product privilege should not apply to Valera's non-party materials.

Additionally, though the parties have not briefed this issue, this court notes that in some circumstances the work product privilege can be waived. *Maldonado v. N.J. ex rel. Admin. Off. of Courts*, 225 F.R.D. 120, 127 (D. N.J. 2004). Waiver of the work product doctrine may occur where the party

asserting the privilege has disclosed the material in a manner that "substantially increases the possibility of an opposing party obtaining the information." *Id.* (quoting *U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1989). Here, there is no indication that the DA Defendants disclosed Ms. Varela's notes to a third party, so the work product privilege, had it applied, was not waived.

### B. Attorney-Client Privilege

A longstanding common law doctrine, the attorney client privilege "encourage[s] full and frank communication between attorneys and their clients." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). The Third Circuit's articulation of the doctrine is as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Maldonado*, 225 F.R.D. at 127-28 (D. N.J. 2004) (quoting *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979)). This privilege "is construed narrowly," *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1423 (3d. Cir. 1991), and "protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent

the privilege." *Id.* 1423-24 (quoting *Fisher v. U.S.*, 425 U.S. 391, 403 (1976)).

A memorialization of a private conversation through notes has been considered a communication for purposes of privilege. *U.S. v. DeFonte*, 441 F.3d 92, 95 (2d Cir. 2006). Stevens argues that Varela's notes are not communications but merely her own records. Counsel for Valera, conversely, argues that Valera's notes "memorialize confidential communications." Because Valera's notes memorialize conversations she had with other ADAs, as well as her supervisors, about Stevens' criminal case, they are communications. However, these communications were not between an attorney and a client: Valera, ADA Price, and DA Powell are all attorneys who were parties to the criminal case in their capacity as prosecutors on behalf of the Commonwealth, so none can simultaneously be considered a client. Therefore, the notes are not protected by attorney-client privilege.

### C. Deliberative Process Privilege

Government executive officials can rely on the deliberative process privilege to withhold materials "containing deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)). The government bears the initial burden of showing that the privilege applies by presenting "more than a bare conclusion or statement that the documents sought are privileged." *Id.* at 854. This burden instead requires the

8

government to show that the materials sought contain "pre-decisional" and "deliberative" information, *Bayliss v. N.J. State Police*, 622 Fed.Appx. 182, 185 (3d Cir. 2015), that is, information reflecting the particular steps taken and processes used by an agency in making a final decision. *Johnson v. Wetzel*, 2016 WL 4158800, at *4 (M.D. Pa. 2016).

The plaintiff in *Bayliss*, who was asserting civil rights violations by state police, obtained documents containing senior personnel opinion regarding investigations into the police conduct. *Bayliss*, 622 Fed.Appx. at 184. The court there held that these documents were protected by the deliberative process privilege because they were considered by the Commanding Officer in making his recommendation to the state police Superintendent, who was responsible for the final decision on disciplinary actions. *Id.* at 185. In *Griffin-El v. Beard*, 2009 WL 1606891, at *1 (E.D. Pa. 2009), by contrast, the inmate plaintiff, alleging constitutional violations against Pennsylvania Department of Corrections employees, sought production of certain mental health records. The court there held that the documents were not deliberative in nature, and thus not privileged, because there was "no indication" how they would "factor into a decision" regarding plaintiff's confinement. *Id.* at *7.

Courts in other jurisdictions have held that the deliberative process privilege covers communications between District Attorneys and their subordinate prosecutors regarding criminal prosecutions. *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34-35 (D. Mass. 2004); *Thompson v. Lynbrook Police Dept.*, 172 F.R.D. 23, 27 (E.D. N.Y. 1997). The plaintiff in *Velazquez*,

9

alleging civil rights violations against the city and police officers after being granted a new trial based on DNA testing related to his prior conviction, sought in discovery the criminal case file from his earlier trial. *Velazquez*, 226 F.R.D. at 32-22. The court there withheld from discovery certain "confidential communications" between the DA and an Assistant DA regarding decisions about DNA testing and dismissal of charges. *Id.* at 34-35. The court noted that "[f]orced disclosure of this type of communication would significantly undermine the decision-making process." *Id.*

Similarly, the plaintiff in *Thompson*, alleging civil rights violations against police officers and the police department regarding his prosecution, sought in discovery the case file from his arrest. *Thompson*, 172 F.R.D. at 25. The court there, relying on the deliberative process privilege, protected certain memoranda produced by assistant DAs that referred to "the steps taken by the assistant district attorneys in completing their investigation, and their professional opinions on the merits of the plaintiff's complaint, and their recommendations to the file and higher-ranking officials within the Office of the District Attorney on what, if any, action should be taken." *Id.* at 27.

Here, like the materials protected in *Velazquez* and *Thompson*, Valera's notes reflect conversations among DAs and her supervisor relating to their decision-making process during Plaintiff's criminal case. These conversations concerned the DA's trial strategy regarding the case's main witness, Jessi Sullum, and thus represent key deliberations preceding the prosecutorial decision to dismiss the case against Plaintiff. Valera's notes

also reflect her professional opinion on the DA's trial strategy, an opinion which she expressed to her superiors. Confidential communications like these are the type contemplated by the deliberative process privilege, and their protection furthers the public interest in preserving the quality of agency decisions. *See Redland Soccer Club*, 55 F.3d at 854.

However, the deliberative process privilege is not absolute: even after the government shows that the materials are entitled to the privilege, they may be disclosed if the party seeking discovery shows that "its need for the documents outweighs the government's interest." *Id.* For instance, the privilege may be overcome where "[i]mproper motivation on the part of a government agency" is at issue. *Del. Riverkeeper Network v. Del. River Basin Comm'n*, 300 F.R.D. 207, 214 (D. N.J. 2014).

In *Velazquez*, the court allowed disclosure of certain other documents, notes made by assistant DAs regarding the "allegedly tainted trial" at issue, because they demonstrated "the prosecutor's state of mind or strategy in pursuing the case," which were "matters at the heart of the litigation itself." *Velazquez*, 226 F.R.D. at 34. Likewise, in *Burbar v. Inc. Vill. Of Garden City*, 303 F.R.D. 9, 14 (E.D. N.Y. 2014), a malicious prosecution and abuse of process case, the court held that the deliberative process privilege was inapplicable to certain documents that reflected the "intent and decision making process of the County defendants," matters that were "unquestionably at the heart" of the civil claims.

In *Thompson*, by contrast, the court did not find that the deliberative process privilege had been overcome, because the documents sought related to the DA's decision not to prosecute the arresting police officer and thus were not relevant to the issues in that case—civil rights claims based on the arrest itself. *Thompson*, 172 F.R.D. at 27.

Plaintiff here, claiming malicious prosecution and abuse of process, challenges the defendant DAs' intent and motivation in prosecuting him. (Doc. 1, ¶ 68). As support for his claims, Plaintiff alleges that the defendant DAs ignored evidence of Sullum's unreliability and manufactured a "completely fabricated false narrative" by "[c]reating evidence of PTSD where none exist[ed]." (Doc. 1, ¶¶ 44, 53-54). The communications reported in Valera's notes implicate matters at the heart of Plaintiff's claims: as evidence of the DA Defendants' efforts to restore witness credibility, the notes shed light on the Defendants' intent and motivations in continuing to pursue the criminal prosecution of Plaintiff. Because these notes pertain to the core issues of his claim, Plaintiff's need for the notes outweighs the government's interest in protecting them. As a result, Valera's notes are not protected by the deliberative process privilege in this case.

## III. CONCLUSION

The objections by Valera's counsel at Valera's deposition to the questioning of her by Plaintiff's counsel regarding her notes is **OVERRULED**.

Plaintiff will be permitted to re-depose Ms. Valera with the ability to ask her about the subject notes. An appropriate Order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 2, 2021**
20-1911-03