# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOHN STEVENS,

      Plaintiff

v.

JESSI SULLUM, *et al.*,

      Defendants

:
:
:
:
:
:
:

CIVIL ACTION NO. 3:20-1911

(JUDGE MANNION)

## MEMORANDUM

On October 16, 2020, Plaintiff John Stevens ("Plaintiff" or "Stevens") filed a complaint in this District, (Doc. 1), asserting various claims against Lackawanna County's District Attorney Mark Powell, Assistant District Attorney Judy Price, Detective Chris Kolcharno, Detective Michelle Mancuso (collectively, the "DA Defendants"), Jessi Sullum ("Sullum"), and Lackawanna County. Plaintiff alleges in his complaint claims for: malicious prosecution (Count I), abuse of process (Count II), false arrest (Count III), and false imprisonment (Count IV) under 42 U.S.C. §1983, conspiracy to violate his civil rights (Count V) under 42 U.S.C. §1985, and malicious prosecution (Count VI), abuse of process (Count VII), and tortious interference with contractual relations (Count VIII) under state law.[1] Plaintiff

---

[1] On January 8, 2021, the DA Defendants and Lackawanna County filed a motion for protective order requesting a stay of discovery pending a resolution of this motion to dismiss. (Doc. 16). In its opinion denying the

thereafter filed an amended complaint on December 15, 2020 asserting the same claims. (Doc. 9).

Pending before the Court are two separate motions to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, filed on behalf of defendant Sullum, the DA Defendants, and Lackawanna County. (Docs. 11, 13). Viewing the evidence in a light most favorable to the non-moving party, the Court will: **DENY** the DA Defendants' motion to dismiss as to Counts I, III and IV; **DENY** defendant Sullum's motion to dismiss as to Count VI; **DENY** defendant Powell's motion to dismiss as to Count VIII; and **GRANT** the defendants' motions to dismiss as to the remaining Counts.

## I.    BACKGROUND

Plaintiff John Stevens is a chiropractor operating a practice in Lackawanna County, Pennsylvania. In January 2018, defendant Sullum initiated an online conversation with Stevens through Facebook private messenger, which continued over the course of several months. On or about March 21, 2018, defendant Sullum scheduled and attended an appointment

---

motion for protective order, this Court also dismissed several claims with prejudice including: (1) Plaintiff's claims under §1983 against the DA Defendants to the extent they were asserted against them in their official capacities; (2) Plaintiff's claims for punitive damages against Lackawanna County and the DA Defendants in their official capacities; and (3) Plaintiff's claims for violation of his civil rights under the 5th Amendment. (Doc. 23 at 8).

with Stevens for chiropractic treatment at Steven's office. Following the March 21, 2018 visit, the online conversation between the Plaintiff and Sullum continued, which Plaintiff claims became more personal and culminated in Sullum requesting a personal massage from Stevens. Although his chiropractic office was closed for the day, Stevens agreed to provide a one-on-one session to Sullum and Sullum arrived at Stevens' office around 1:00 p.m. on March 27, 2018. Plaintiff claims that "[o]nce inside Plaintiff's chiropractic office, Sullum [] asked to take clothes off," which apparently was "the second time that Sullum unilaterally mentioned taking her clothes off." After removing her clothes and lying on the massage table, Sullum allegedly "made several suggestive gestures, including touching Plaintiff's thigh," after which Sullum and Stevens engaged in sexual activities.

After leaving Stevens' office around 1:50 p.m., Sullum drove back towards her office at Mastri Law LLC and, while in route, purportedly called both her boss, attorney Dominic Mastri, and her aunt, Judge Janine Edwards, and "falsely alleged that she was sexually assaulted." According to the Plaintiff, "[s]everal hours later, Sullum contacted Defendant Detective Chris Kolcharno … and alleged that Plaintiff 'became increasingly sexually aggressive while massaging her.'" It is further alleged that during this call with Kolcharno, Sullum claimed that Stevens "held [Sullum] down," "told her that he wanted oral sex," and pressured her to the point where Sullum performed sexual acts "to placate him." In addition, although Sullum had apparently informed Kolcharno that she had sent private messages to the

3

Plaintiff prior to the incident, Plaintiff claims that Sullum "concealed the fact that she told Plaintiff that he was 'hot' and that Sullum repeatedly asked to take her clothes off."

On the same day of the incident, after the call between Sullum and Kolcharno, defendant Kolcharno and Deputy District Attorney Mariclare Hayes applied for a search warrant to Plaintiff's chiropractic office and served Plaintiff with a subject warrant at his home. The next day, however, Plaintiff provided copies of the messages exchanged between Plaintiff and Sullum to defendant Kolcharno and Mariclare Hayes and vehemently denied any wrongdoing, claiming instead that his relations with Sullum were consensual. According to Plaintiff, "Defendants intentionally disregarded the text/Facebook messages" between Stevens and Sullum "because it did not fit the narrative that they were trying to construct and were directed by Defendants Powell and Price to *intentionally omitt [sic] the messages from all investigation reports and affidavits generated in this case.*"

On March 29, 2018, defendants Kolcharno and Mancuso prepared an affidavit of probable cause for Plaintiff's arrest, which Plaintiff argues improperly omitted certain exculpatory facts that were known to the DA Defendants and remained unfiled for almost eight months. During the roughly eight-month period between the incident and the date the DA Defendants filed the affidavit of probable cause, November 26, 2018, the DA Defendants conducted an investigation that the Plaintiff claims only produced "drunk messages" from Sullum to Stevens and messages in which Sullum told

4

Plaintiff that he was "so hot." Nevertheless, Plaintiff asserts that the defendants filed the affidavit of probable cause without making any changes to the initial draft from March 2018, "omitting Sullum's provocative exculpatory text messages to Plaintiff" and "substantial evidence of … Sullum's[] own unreliability" after Sullum's aunt, Judge Janine Edwards, "prodded Defendants Powell and Price to continue their 'investigation.'" On November 26, 2018, a warrant was issued for Stevens' arrest, after which Stevens turned himself in to the police and was "in custody for several hours before being permitted to leave."

Eventually, Stevens' case was assigned to Deputy District Attorney Sara Varela. In notes written by Varela on January 4, 2019, the DDA stated that she had "expressed to Judy Price that she had serious issue with victim[] [Sullum's] credibility" as the District Attorney's Office had "multiple police reports documenting incidents in which victim has lied to police." Varela further indicated that defendant Price had told her that Price and defendant Powell had planned to send Sullum to a rehabilitation facility for alcoholism and PTSD so as to "explain [Sullum's] lies to the police," and that they could manufacture a diagnosis of PTSD for Sullum in order to "salvage victim['s] credibility" as Sullum had not been diagnosed with PTSD. A preliminary hearing was held on February 5, 2019, during which testimony was presented, including testimony from defendant Sullum, and the matter was "bound over for further discussion." On March 20, 2019, Plaintiff was formally charged with various counts of sexual assault. In addition, Plaintiff claims

5

that defendant Powell "personally contacted the Pennsylvania Office of Enforcement and Investigation in an effort to suspend Plaintiff's chiropractic license," whereafter Plaintiff's license was eventually suspended.

On May 20, 2019, Plaintiff alleges that defendant Kolcharno interviewed Sullum's employer, Anthony Mastri, and that Mastri claimed Sullum had twice called her aunt on the day of the alleged assault and expressed interest primarily in hiring a civil attorney to sue Plaintiff for monetary damages. When Kolcharno attempted to speak with Sullum's aunt regarding this potential issue, however, Sullum's aunt allegedly "refused to speak with Detective Kolcharno." On July 21, 2019, the Lackawanna District Attorney's Office filed a motion for "*nolle prosequi*" dismissing the case against Plaintiff. The Plaintiff argues in his complaint, filed on October 16, 2020, that "Sullum's allegations were nothing more than a means to file a frivolous lawsuit for monetary gain" and that the DA Defendants' efforts to generate false evidence, suspend Plaintiff's chiropractic license, and prosecute Stevens while there remained clear exculpatory evidence supporting his innocence was malicious and in violation of his constitutional rights.

On December 30, 2020, the defendants filed motions to dismiss Plaintiff's §1983, §1985, and state law claims. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343, and it can exercise pendent jurisdiction over the state law claims under 28 U.S.C. §1337. Venue

6

is proper in this district. The Court will thus turn to the merits of Plaintiff's claims.

## II.    STANDARD

The defendants' motions to dismiss are brought pursuant to the Federal Rule of Civil Procedure Rule 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224,

231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). The court, however, may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).[2]

---

[2] Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

8

## III.    DISCUSSION

The Plaintiff raises eight separate causes of action, including: (I) malicious prosecution under §1983 against all defendants; (II) malicious use and abuse of process under §1983 against all defendants; (III) false arrest under §1983 against defendants Kolcharno, Mancuso, and Sullum; (IV) false imprisonment under §1983 against defendants Kolcharno, Mancuso, and Sullum; (V) conspiracy to violate civil rights under §1985 against all defendants; (VI) common law malicious prosecution against defendant Sullum; (VII) common law malicious use and abuse of process against defendant Sullum; and (VIII) tortious interference with employment and economic advantage against defendant Powell. The Court will address each claim individually.

### A. Claims Under 42 U.S.C. §1983

Plaintiff raises four separate claims under Section 1983 against each of the various defendants. These include claims for malicious prosecution, malicious abuse of process, false arrest, and false imprisonment. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

9

action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Thus, to establish a violation of §1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. Baker v. McCollan, 443 U.S. 137 (1979); *see also* Hart v. Tannery, 2011 WL 940311 (E.D. Pa. Mar. 14, 2011).

Plaintiff's raises his four claims under Section 1983 against the DA Defendants, defendant Sullum, and Lackawanna County respectively. The Court will view each of these claims separately for the different defendants.

### a. Section 1983 claims against DA Defendants

As a threshold issue pertaining to each of Plaintiff's §1983 claims against the DA Defendants, the DA Defendants argue that Plaintiff's claims are precluded as the DA Defendants are entitled to immunity from prosecution. For those acting "under cover of law," the doctrine of immunity embodies the "right not to stand trial," In re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000) (citing Mitchell v. Forsyth, 472 U.S. 511, 525 (1985)), and may be properly raised in a Rule 12(b)(6) motion to dismiss, Kulwicki v.

Dawson, 969 F.2d 1454, 1461-62 (3d Cir. 1992). Generally, immunity takes two forms: absolute immunity and qualified immunity.

To qualify for absolute immunity, government actors must show that they were functioning as the State's advocate when performing the challenged actions. Yarris v. Cty. Of Delaware, 465 F.3d 129, 136 (3d Cir. 2006). This inquiry focuses on "the nature of the function performed, not the identity of the actor who performed it." Light v. Haws, 472 F.3d 74, 78 (3d Cir. 2007) (quoting Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001)). Under this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity. Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)); Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989). Therefore, absolute immunity attaches to actions "intimately associated with the judicial phases of litigation," but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings. Giuffre, 31 F.3d at 1251 (quoting Imbler, 424 U.S. at 430) (internal quotation omitted); see also Rose, 871 F.2d at 346 (contrasting the prosecutor's "quasi-judicial" role from his "administrative/investigative" role). The key question is thus whether it is clear that the government actor was performing "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial," or if he was performing the type of conduct more closely aligned with the ordinary work performed by police, conducting investigatory or administrative work "before he has probable cause to have anyone arrested." Rivera-

Guadalupe v. City of Harrisburg Bureau of Police, 2020 WL 4206209, at *4 (M.D. Pa. July 22, 2020) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 275-76 (1993)); *see also* Burns v. Reed, 500 U.S. 478, 496 (1991) ("[T]he Supreme Court [has] held absolute immunity does not extend to the prosecutorial function of giving advice to the police prior to an arrest or indictment.").

"Prosecutors [and officers] who are not entitled to absolute immunity from a plaintiff's claims may nonetheless be entitled to qualified immunity" as they are shielded from suit when performing "discretionary functions" if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Yarris v. Cty. Of Delaware, 465 F.3d 129, 139 (3d Cir. 2006); Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Reichle v. Howards, 566 U.S. 658, 664 (2012) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."). Qualified immunity, like absolute immunity, provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). It is, however, "generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); *but see* Campeggio v. Upper Pottsgrove Twp., 2014 WL 4435396, at *10 (E.D. Pa. Sept. 8, 2014)

(noting that as qualified immunity is an immunity from suit, the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation" (quoting Pearson v. Callahan, 555 U.S. 223, 231-32 (2009))).

To determine whether a defendant is entitled to qualified immunity, courts may analyze two factors: (1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, (2) whether those rights were "clearly established" at the time of the incident. *But see* Pearson v. Callahan, 555 U.S. 223, 232-36 (2009) (finding that use of this two-step analysis, set forth in Saucier v. Katz, 533 U.S. 194 (2001), was no longer mandatory, but could be employed at the court's discretion). The court, however, is "required to consider whether, under the factual scenario of this case, the officers were reasonable to believe that their actions did not violate the [plaintiff's] clearly established rights." Perez v. Borough of Berwick, 507 F. App'x. 186, 192 (3d Cir. 2012).

Absolute and qualified immunity constitute affirmative defenses. Therefore, courts may only grant a 12(b)(6) motion to dismiss based on immunity if such immunity "clearly appear on the face of the complaint." Rivera-Guadalupe, 2020 WL 4206209, at *4 (quoting Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir. 1989)); *see also* Weimer v. Cty. of Fayette, Pennsylvania, 972 F.3d 177, 187 (3d Cir. 2020) ("a defendant must show that the conduct triggering absolute immunity 'clearly appear[s] on the face of the complaint'" (citing Fogle v. Sokol, 957 F.3d 148, 161 (3d Cir. 2020))).

In the current stage of this litigation, however, there remain clear material issues of fact on the face of the complaint as to whether the nature of the steps taken by defendants Powell and Price during the periods between the initial incident, the filing of the affidavit of probable cause, and the filing of official charges against Plaintiff were investigative or prosecutorial in nature or if the DA Defendants reasonably believed their actions did not violate the Plaintiff's constitutional rights. Though the Court may recognize that there are established rights under the Constitution to protect against malicious prosecutions or seizures without probable cause, whether the Plaintiff's rights were thus violated in the current matter requires further fact discovery. As such, it would be improper to make a clear determination at this point as to whether absolute or qualified immunity precludes the Plaintiff's Section 1983 claims as to the DA Defendants.[3] The Court must therefore look to the claims set forth by Plaintiff in the complaint to determine whether he has pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 544.

---

[3] The ability to litigate claims against government actors may reflect a means to prevent abuses of authority, though there are "several checks other than civil litigation to prevent abuses of authority." Burns, 500 U.S. at 496. One of the most important checks, however, the judicial process, will not always preclude prosecutorial indiscretions, particularly in instance, such as here, where a suspect is not eventually prosecuted as the actions of the government actors are not subjected to the "crucible of the judicial process." Id. (quoting Imbler, 424 U.S. at 440).

### i. Malicious Prosecution

To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Curry v. Yachera, 835 F.3d 373, 379 (3d Cir. 2016) (quoting Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007)); Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

The Plaintiff alleges that the initiation of criminal proceedings by the DA Defendants, which included filing various charges involving sexual crimes,[4] was commenced without probable cause and with malice, and resulted in Plaintiff's arrest. The DA Defendants, however, argue that a claim for malicious prosecution cannot be sustained as even though the criminal proceedings against Plaintiff were dismissed after the filing of a motion for *nolle prosequi*, the proceedings "did not end in the Plaintiff's favor." (Doc. 12 at 10).

---

[4] The charges filed by the Lackawanna County District Attorney's Office against Plaintiff included: deviate sexual intercourse by forcible compulsion and indecent assault without consent of another in violation of 18 Pa. C.S.A. §3123a(A)(1); indecent assault by forcible compulsion in violation of 18 Pa. C.S.A. §3123 a(A)(2); unlawful restraint in violation of 18 Pa. C.S.A. §2902 a(A)(1); and simple assault in violation of §2701(a)(1) of the Pennsylvania Crimes Code.

It has been established in the Third Circuit that while "a grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (quoting Hilfirty v. Shipman, 91 F.3d 573, 579-80 (3d Cir. 1996)). Instead, a decision by the government to file a motion for *nolle prosequi* abandoning criminal charges "signifies termination of charges in favor of the accused only when their final disposition is such as to indicate the innocence of the accused." Donahue, 280 F.3d 371, at 383 (citation omitted). Nevertheless, the court may look beyond the *nolle prosequi* order itself "to any other matter in the record ... as to why the motion was filed or granted." Spiess v. Pocono Mountain Reg'l Police Dep't, 2013 WL 1249007, at *12 (M.D. Pa. Mar. 26, 2013) (quoting DiFronzo v. Chiovero, 406 F. App'x 605, 609 (3d Cir. 2011)); *see also* Kossler v. Crisanti, 564 F.3d 181, 187-94 (3d Cir. 2009) (district courts must conduct a "fact-based inquiry" to consider, in conjunction with the *nolle prosequi*, "underlying facts" and "particular circumstances" as to why the order was filed).

To make their argument, the DA Defendants reference the direct language within the *nolle prosequi* order, which states, in part, that "the offenses contained in the Criminal Information filed in the above-referenced captioned matter are hereby *nolle prossed* pursuant to Pa.R.Crim.P. 585."

(Doc. 27-1 at 1).[5] The motion supporting the order, however, goes on to state that "[a]fter criminal charges were filed [against Stevens], the investigative team has both uncovered and been made aware of additional information which caused substantial concern about the continued viability of this case moving forward ... [and] have developed and expressed significant doubt and serious questions about the complete accuracy and credibility of the underlying allegations." (Id. at 2).

Unlike cases where dismissal is proper as a motion and order for *nolle prosequi* fail to indicate why charges were dismissed or that the defendant was in fact innocent, *see* DiFonzo, 406 F. App'x. at 609 (*nolle prosequi* insufficient to signify termination in favor of accused where it "says nothing

---

[5] Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir. 1997) (citing Angelastro v. Prudential-Bache Sec. Inc., 764 F.2d 939, 944 (3d Cir. 1983)). Courts, however, may consider any "document integral to or explicitly relied upon in the complaint ... without converting motion to dismiss into one for summary judgment." Id. (citation omitted); In re Donald Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). The Court may thus look to the *nolle prosequi* order and motion in coming to its determination as they were integral to and relied upon in the complaint. (Doc. 27-1). The Court also recognizes that the DA Defendants filed a copy of the order and motion in its initial motion to dismiss, (Doc. 6-2), but included only the order in their follow-up filing, (Doc. 12-2). Though this may have been an accidental omission, the Court will rely on the exhibit filed by the Plaintiff as it includes the entire document. The Court, however, will not review further evidence that extends outside the bounds of a 12(b)(6) review that would convert the defendants' motions to dismiss to motions for summary judgment. *See* (Doc. 29 at 2).

as to why the motion was filed or granted"), the motion here provides further clarity as to the DA Defendants' reasoning. Though there is no unequivocal statement that Plaintiff was innocent of the crimes of which he was charged, the motion, following an extended investigation, indicates that the DA Defendants felt the allegations made against Stevens were questionable to the point that they could be inaccurate or not credible. Therefore, the facts surrounding the *nolle prosequi* and the motion itself support a finding that the claims against the Plaintiff were terminated in his favor. *Compare* DiFronzo, 406 F. App'x. at 609 *with* Geness v. Cox, 902 F.3d 344, 356 (3d Cir. 2018) (*nolle prosequi* was a favorable termination as the abandonment of charges for "insufficient evidence" unquestionably provided "an indication that the accused is actually innocent of the crimes charged") *and* Spiess, 2013 WL 1249007, at *13 (*nolle prosequi* was favorable termination where, upon continued investigation, the government determined that the victim falsely testified about "a material matter" and the case therefore "lack[ed] prosecutorial merit").

As the DA Defendants do not raise other objections to the Plaintiff's malicious prosecution claim, the Court will deny DA Defendants' motion to dismiss this claim without further delving into the sufficiency of the other elements.

### ii. Malicious Use and Abuse of Process

"While malicious prosecution 'has to do with the wrongful initiation of civil process,' abuse of process 'is concerned with perversion of process after

18

litigation has begun.'" Gebhart v. Steffen, 574 F. App'x 156, 160 (3d Cir. 2014) (quoting U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002)). In other words, a plaintiff must show that the criminal action "was initiated legitimately and then 'perverted.'" Bristow v. Clevenger, 80 F.Supp.2d 421, 431 (M.D. Pa. 2000). If, however, a "process is wrongfully initiated and thereafter perverted, both torts lie." Jennings v. Shuman, 567 F.2d 1213, 1218 (3d Cir. 1977); see also Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 307-08 (3d Cir. 2003) (providing analysis of what constitutes a "perversion" of the legal process, which leads to liability where the application of a legal process is so "lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure" (quoting Nienstedt v. Wetzel, 133 Ariz. 348, 354 (1982))). To establish a claim for abuse of process, a plaintiff must show evidence of an act or threat not authorized by the process or aimed at an illegitimate objective. Mitchell v. Guzick, 138 F. App'x 496, 502 (3d Cir. 2005) (citing Bristow, 80 F.Supp.2d at 430-31).

Plaintiff alleges that the DA Defendants initiated and then continued to pursue criminal proceedings against Plaintiff at the insistence of defendant Powell and Sullum's aunt, Judge Janine Edwards. Plaintiff claims that the motives for such pressure were, "in part," retaliatory in nature as Plaintiff had made disparaging comments about, and refused to work with, the Powell

Law Firm.[6] To Plaintiff, the culmination of Powell and Edward's pressure led to the filing of an affidavit of probable cause against Stevens in November 2018. Plaintiff also claims that his subsequent arrest and the eventual filing of criminal charges against him in March 2019 were also the result of this pressure.

Such allegations, however, do not support a claim that the purpose of the criminal proceedings against Plaintiff were "lacking in justification as to lose [their] legitimate function as [] reasonably justifiable litigation procedure." *See* Hart, 2011 WL 940311 (though plaintiff claimed the defendant witness "forum shopped" criminal accusations to authorities "she knew to be false in order to have criminal charges brought against Plaintiff," the defendant authorities merely carried out the process to its authorized conclusion). Further, Plaintiff fails to point to the clear "perversion" of the legal process that furthered such an illicit purpose after the proceedings were commenced.[7] Therefore, the DA Defendants' motion to dismiss Plaintiff's claim for abuse of process will be granted.

---

[6] Plaintiff argues that his personal legal history with the Powell Law Firm – which the Court can only assume is somehow linked to defendant District Attorney Powell – resulted in the Powell Law Firm "losing many clients and substantial revenue," which would reflect the true motive for the DA Defendants' push to prosecute Plaintiff. Plaintiff does not allude to the motive for Sullum's aunt, Judge Janine Edwards, to "use her influence" to persuade the DA Defendants to pursue criminal charges against Stevens.

[7] Plaintiff also bases his claim on notes written by Deputy District Attorney Sara Varela on January 4, 2019, indicating that she was told by defendant Price that Price and defendant Powell planned to send Sullum to

### iii. False Arrest

A claim under Section 1983 for false arrest is grounded in the Fourth Amendment guarantee against unreasonable seizures. Garcia v. Cty. of Bucks, 155 F.Supp.2d 259, 265 (E.D. Pa. 2001) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)). To maintain a claim for false arrest, a plaintiff must show that he or she was arrested and the arresting officer "lacked probable cause to make the arrest." Id. Probable cause exists when the facts and circumstances are "sufficient to justify a prudent officer in believing that the suspect had committed or was committing a crime." Jones v. Middletown Twp., 253 F. App'x 184, 188 (3d Cir. 2007) (citing Gerstein v. Pugh, 420 U.S. 103, 111 (1975)). A court will look to the "totality of the circumstances" and use a common-sense approach in assessing whether there is or is not probable cause. Id. (citing United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984)). Probable cause is thus determined by

---

a rehabilitation facility for alcoholism and PTSD so as to "explain [Sullum's] lies to the police," and that they could manufacture a diagnosis of PTSD for Sullum in order to "salvage victims credibility" as Sullum had not been diagnosed with PTSD. Though the fabrication of evidence in order to further criminal proceedings could potentially be construed as a perversion of the legal process that could indicate an abuse of process, the Plaintiff does not allege the DA Defendants used such evidence in charging documents or that it impacted his criminal proceedings in any material way. *See* (Doc. 9 at ¶¶ 52-55).

the facts and circumstances within the officer's knowledge at the time of the arrest. Hart, 2011 WL 940311, at *10.[8]

Plaintiff alleges that he was arrested by defendants and "[c]onfined against his will," but that there were five separate facts of which the DA Defendants were aware before they arrested the Plaintiff that undermined any finding of probable cause and that they failed to include in their affidavit of probable cause. These mitigating facts include: (1) that Plaintiff denied any wrongdoing and maintained that the encounter was consensual; (2) that Plaintiff and Sullum engaged in extensive text messaging that was flirtations in nature; (3) that Sullum concealed the substance of the text messages from the police; (4) that Sullum texted Plaintiff in the presence of detectives to elicit an incriminating response that instead "yielded clear evidence" that Stevens believed the encounter was consensual; and (5) that Sullum was

---

[8] In contrast, when a plaintiff was arrested pursuant to a warrant, it is proper for the Court to "focus[] its probable cause analysis on whether [the defendant] 'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for the warrant.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)) (internal quotation marks omitted). The Third Circuit has held that "omissions are made with reckless disregard if an officer withholds a fact in his ken" such that "[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know." See Id. (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993) (internal quotation marks omitted)). Though the DA Defendants do not raise this argument, it is reasonable at this stage to assume that the information below omitted by the DA Defendants would be information that a judge signing a warrant "would wish to know."

known to the Lackawanna County criminal justice system as having previously lied to police in connection with separate domestic disputes.

While there are still questions as to the clear circumstances surrounding the Plaintiff's arrest and the involvement of the various DA Defendants, such questions are not dispositive at the motion-to-dismiss stage of litigation. As a finding of probable cause is fact specific and the Plaintiff alleges various facts that could undermine the assertion that the DA Defendants had such cause for Stevens' arrest,[9] viewing the evidence in the light most favorable to the non-moving party, the Court will deny the DA Defendants' motion to dismiss the Plaintiff's false arrest claim.

### iv. False Imprisonment

Like a claim for false arrest, a claim for false imprisonment under Section 1983 is based in the Fourth Amendment and the guarantee against unreasonable seizures. Garcia v. County of Bucks, 155 F.Supp.2d 259, 265 (E.D. Pa. 2001). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under §1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). Therefore, where a claim for false arrest is sustained, a claim for false imprisonment is also sustained. As Plaintiff has

---

[9] The Court also notes that the DA Defendants' decision to file the affidavit of probable cause and an arrest warrant for the Plaintiff was made after an investigation and months of review of the facts involved, which must further call into question that decision and the reasonableness behind the weighing of all the circumstances.

properly pled both causes of action, the Court will thus deny the DA Defendants' motion to dismiss Plaintiff's false imprisonment claim.

### b. Section 1983 claims against defendant Sullum

"Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005) (citing 42 U.S.C. §1983). For purposes of Section 1983, the term "under cover of [law]" is construed to also mean "state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). A plaintiff thus seeking to "hold an individual liable under §1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." Id. (citing Benn v. Universal Health Sys., 371 F.3d 165, 169-70 (3d Cir. 2004)). Where the actors are not state or municipal officials but are private individuals, courts must address whether their activity can nevertheless be deemed to be under color of law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982). This inquiry is fact-specific. Id.; Krynicky v. University of Pittsburgh, 742 F.2d 94, 97-98 (3d Cir. 1984).

The color of state law analysis can be difficult, but is grounded in a basic and clear requirement, "that the defendant[s] in a §1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). The issue is not whether the state was involved in some

way in the relevant events, but whether the action taken by a defendant can be fairly attributed to the state itself. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974); *see also* Borrell v. Bloomsburg Univ., 870 F.3d 154, 160 (3d Cir. 2017) (courts will ask whether there was "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself").

The Supreme Court has set forth three approaches for determining whether a certain action was conducted under color of state law: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995) (other alterations, internal quotation marks and citations omitted). The Third Circuit, however, has narrowed these tests into one inquiry: "'whether the private party has acted with the help of or in concert with state officials,' a test also known as the 'joint action test.'" Romich v. Sears Holding Corp., 2013 WL 5925082, at *12 (E.D. Pa. Nov. 5, 2013) (quoting Kach, 589 F.3d at 646) (citing Cahill ex rel. L.C. v. Live Nation, 512 F. App'x. 227, 230 (3d Cir. 2013)). Under this "joint action test," "a private party will be deemed a state actor if it is a 'willful participant in joint action with the State or its agents.'" Cahill, 512 F. App'x. at 230 (quoting Lugar, 457 U.S. at 941).

In view of the Plaintiff's claims, as defendant Sullum is not a state employee, any liability under Section 1983 is dependent on whether the Plaintiff properly pled that Sullum was a state actor as a "willful participant in joint action with the State or its agents." Lugar, 457 U.S. at 941. The Plaintiff argues that this "joint action" included Sullum's involvement in the DA Defendants' investigation and the creation of a narrative that painted Plaintiff in a criminal light. Plaintiff, however, does not allege Sullum took any steps to influence the DA Defendants' investigation or work jointly with the other defendants except to give her accounts of the events of March 27, 2018. Plaintiff instead merely claims in conclusory fashion that "Defendants," including Sullum, "conspired to violate Plaintiff['s] civil rights." Such conclusory claims are insufficient to establish that Sullum was acting in concert with the State to a degree where she would be considered a "willful participant in joint action with the State." See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010) (Bare allegations of conspiracy, or the assertion that "[d]efendants engaged in a concerted action of a kind not likely to occur in the absence of agreement," are insufficient.).

Even as Plaintiff has failed to plead facts sufficient to show that defendant Sullum was acting under color of law, it must also be recognized that alleged victims who later act as witnesses in legal proceedings are generally protected from certain civil liability in order to thwart any efforts to disincentivize participation in the judicial process. See Briscoe v. Lahue, 460 U.S. 325, 329-33 (1983) (trial witnesses generally have immunity with

26

respect to federal civil claims as they would not be acting "under color of law" when providing testimony); Rehberg v. Paulk, 566 U.S. 356, 371 (2012) (a complaining witness, like a witness providing trial testimony, is likewise generally immune from suit for grand jury testimony). Such protections arise as "the claims of the individual [against a witness] must yield to the dictates of public policy." Briscoe, 460 U.S. at 332-33. Though to what degree Sullum would constitute a "witness" across the various alleged federal claims for immunity purposes would still require further analysis, immunity may be extended even where it will inconsequently provide far more leeway than should be allowed in a criminal justice system that strives first and foremost for truth.[10] Irrespective of such an analysis, the defendant Sullum's motion to dismiss Plaintiff's federal Section 1983 claims will be granted.

c. Section 1983 claims against defendant Lackawanna County

Claims against a municipality under Section 1983 are available only under certain circumstances. In Monell v. Dep't of Soc. Servs. of N.Y.C., the Supreme Court states that "local governing bodies ... can be sued directly under §1983 ... where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or

---

[10] Though a witness generally may not be subject to federal civil liability as a result of false testimony at the grand jury or trial phase of litigation, criminal measures may still be taken. The same can be said of filing a false report with the police. Such measures must act as a deterrence to lying under oath or to authorities.

decision officially adopted and promulgated by that body's officers." <u>436 U.S.</u> <u>658, 690 (1978)</u>. Thus, a municipality may be held liable under Section 1983 where "the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." <u>Reitz v. Cty. of Bucks, 125 F.3d 139, 144</u> <u>(3d Cir. 1997)</u> (citing <u>Monell, 436 U.S. 658 at 690-91</u>). The Third Circuit has interpreted this to allow for liability under three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, <u>Jett v. Dall. Indep.</u> <u>Sch. Dist., 491 U.S. 701, 737 (1989)</u>; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, <u>Pembaur v. City</u> <u>of Cincinnati, 475 U.S. 469, 480-81 (1986)</u>; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, <u>City of St. Louis v.</u> <u>Praprotnik, 485 U.S. 112, 127 (1988)</u>.

<u>Spiess, 2013 WL 1249007, at *19</u> (quoting <u>McGreevy v. Stroup, 413 F.3d</u> <u>359, 367 (3d Cir. 2005)</u>). In essence, a party must show that an unconstitutional policy or custom exists or was created by a decisionmaker possessing final authority. <u>Forrest v. Parry, 930 F.3d 93, 105-06 (3d Cir.</u> <u>2019)</u> ("[A] plaintiff presenting an unconstitutional policy must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject. And, if alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law.").

Plaintiff argues that the decisions to prosecute and detain Stevens, allegedly fabricate evidence, and coordinate the prosecution of Stevens with a county judge "were as a result of the policies, practices and/or customs of the Lackawanna County and Lackawanna County District Attorney's Office." The Plaintiff, however, does not point to a specific policy or custom in place that it claims led to these actions. *See* Jones v. Cty. of York, 2020 WL 3892878, at *4 (M.D. Pa. July 10, 2020) ("[F]or a municipality to be liable under a municipal policy or custom theory, the plaintiff needs to point to a specific policy or a custom that caused his injury.").

Furthermore, the Plaintiff fails to claim that the actions of the DA Defendants created a policy or custom instead of merely reflecting one, thus undermining any potential assertion that the actions themselves somehow instituted a new path forward for the DA Defendants and Lackawanna County. As Plaintiff fails to point to any established unconstitutional policy or custom but only offers a conclusory assertion, defendant Lackawanna County's motion to dismiss Plaintiff's Section 1983 claim will be granted.

B. Conspiracy to Violate Civil Rights Claims Under 42 U.S.C. §1985

Similar to the terms of Section 1983, the terms of Section 1985 do not create a substantive right, but merely provide a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. Great American Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). Section 1985(3), which provides for claims stemming

from a conspiracy to deprive a plaintiff of constitutional equal-protection rights or privileges, states in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws … whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

42 U.S.C. §1985(3). Following its initial decision in Griffin v. Breckenridge, 403 U.S. 88 (1971) concerning Section 1985(3) claims, the Supreme Court made clear that for a plaintiff to substantiate a claim under 1985(3), he or she must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983) (citing Griffin, 403 U.S. at 102-03); Lake, 112 F.3d at 685 (same). Further, "[t]he Griffin Court emphasized that because §1985(3) requires the 'intent to deprive of equal protection, or equal privileges and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' in

order to state a claim." <u>Farber v. City of Paterson, 440 F.3d 131 (3d Cir.</u>
<u>2006)</u> (citing <u>Griffin, 403 U.S. at 102</u>)).

As the Plaintiff has failed to claim any "racial, or perhaps otherwise
class-based, invidiously discriminatory animus behind the [alleged]
conspirators' action," his Section 1985 claim will be dismissed.[11]

### C. Claims Under Pennsylvania State Law

The Plaintiff raises three separate claims under state law – for
malicious prosecution and malicious use and abuse of process against
defendant Sullum, and for tortious interference with employment and
economic advantage against defendant Powell.

#### a. State malicious prosecution claim against defendant Sullum

To prevail on a malicious prosecution claim under Pennsylvania law, a
plaintiff must prove that "the defendant (1) instituted proceedings against the
plaintiff, (2) without probable cause, (3) with malice, and (4) that the

---

[11] Plaintiff recognizes that he misstated the proper section of the U.S.
Code in his amended complaint – as he did in his initial complaint – when
pleading his conspiracy claim and offers a revised view of his amended
complaint in his briefing. This, however, does not act to amend the amended
complaint and properly plead a conspiracy claim under Section 1983, nor do
the facts set forth in his pleading properly identify any particular grounds
upon which it could be deduced that the Plaintiff initially attempted to plead
a Section 1983 conspiracy claim. *See* (Doc. 9 at 17) (Plaintiff broadly states,
as with his other claims, that he "incorporates by reference … the allegations
of the preceding paragraphs," improperly leaving it to the Court to decide
whether facts have been properly pled for a conspiracy claim). I

proceedings were terminated in favor of the plaintiff." Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Commw. Ct. 2003) (citing Turano v. Hunt, 631 A.2d 822, 824 (Pa. Commw. Ct. 1993)). A state law cause of action for malicious prosecution thus includes the same first four elements as a claim under Section 1983 but does not require showing a deprivation of liberty. *See* Napier v. City of New Castle, 407 F. App'x 578, 583 (3d Cir. 2010) (listing the elements of the Pennsylvania cause of action for malicious prosecution as enumerated in Corrigan). A state malicious prosecution claim also does not require that the plaintiff allege a violation of the United States Constitution or that the defendant was acting under color of law. *But see* Milbourne v. Baker, 2012 WL 1889148, at *12 (E.D. Pa. May 23, 2012) (although the elements for malicious prosecution under state and federal law appear similar, "except for the requirement of a constitutional violation under §1983," they also "differ in substance").

In analyzing claims for malicious prosecution, Pennsylvania courts have relied extensively on the Restatement (Second) of Torts. Shoop v. Dauphin Cty., 766 F.Supp. 1327, 1338 (M.D. Pa. 1991); *see also* Bradley v. Gen. Accident Ins., 778 A.2d 707, 710-11 (Pa. Super. Ct. 2001) (comment g of the Second Restatement is a guide in determining a private individual's responsibility for initiating proceedings by providing statements to police). The Restatement acknowledges that a private individual who reports suspected criminal conduct to a law enforcement officer causes the institution of any subsequent proceedings initiated as a result of the

32

information provided. Restatement (Second) of Torts §653 cmt. g (1977). Comment g of the Second Restatement, however, clarifies that for a private person, "giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to [the officer's] discretion to initiate the proceedings or not." Id. Instead, a claim for malicious prosecution may exist where "an intelligent exercise of the officer's discretion becomes impossible" because a private individual knowingly provides false information on which the initial prosecution relied. Id.; Cooper v. Muldoon, 2006 WL 1117870 (E.D. Pa. Apr. 26, 2006).

Plaintiff here alleges that defendant Sullum knowingly provided false information to the DA Defendants regarding the sexual encounter between Sullum and Stevens, and that this false information led to the Plaintiff's prosecution for various sexual assault charges. See Washington v. City of Philadelphia, 2010 WL 3058369, at *3 (E.D. Pa. Aug. 2, 2010) (a private party may have "initiated" or "procured" criminal proceedings when providing knowingly false information to authorities (citing Hess v. Lancaster Cty., 514 A.2d 681, 683 (Pa. Commw. Ct. 1986))). Plaintiff also generally claims that Sullum maliciously acted without probable cause and, as discussed above, the criminal proceedings were terminated in Plaintiff's favor. The Court, therefore, viewing the evidence in the light most favorable to the Plaintiff, will deny defendant Sullum's motion to dismiss Plaintiff's state malicious prosecution claim.

b. State malicious abuse of process claim against defendant Sullum[12]

"The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) (citing Publix Drug Co. v. Breyer Ice Cream Co., 32 A.2d 413 (Pa. 1943)); *see also* Mitchell, 138 F. App'x. at 502 (an abuse of process occurs when a "prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by the law," such as blackmail or abuse (quoting Jennings, 567 F.2d at 1217)). To establish a claim of abuse of process under Pennsylvania law, a plaintiff must show that the defendant (1) used legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) caused harm to the plaintiff. Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super. Ct. 2002) (citing Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998); *see also* Gen. Refractories Co. 337 F.3d at 304.

As with claims for malicious prosecution, Pennsylvania courts have turned to the Second Restatement of Torts for guidance. The tort of "abuse of process" is defined as the use of legal process against another "primarily

---

[12] Plaintiff also raises a "malicious use of process" claim in conjunction with his abuse of process claim. A malicious use of process claim, however, traditionally mirrors a malicious prosecution claim and is the alternative to a malicious prosecution claim in the civil context. *See* Rose, 871 F.2d at 350 n.17 (explaining that an abuse of process and malicious use of process, "also known as malicious prosecution," are separate torts.).

to accomplish a purpose for which it is not designed." Restatement (Second) of Torts §682. The Restatement states in relevant part:

> The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section.

Id. at cmt. a. As a result, a court must determine whether the legal process in question was used "primarily 'to benefit someone in achieving a purpose which is not the authorized goal of the procedure in question.'" Gen. Refractories Co. 337 F.3d at 304 (quoting Werner, 799 A.2d at 785); see also Al Hamilton Contracting Co., 644 A.2d 491, 191-92 (Pa. Super. Ct. 1994) ("It is not enough that the defendant had bad or malicious intentions … [r]ather, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action.").

Plaintiff claims that Sullum falsely accused Stevens of coercion because she "intend[ed] to file a civil lawsuit for monetary gain" and "conceal [an] affair," and that she repeated these false claims when she testified during a preliminary hearing. Plaintiff, however, fails to show how the legal

proceedings were used primarily for a purpose that they were not intended or to coerce a desired result, as Plaintiff alleges that Sullum provided her false testimony in a preliminary hearing as part of the government's efforts to support a criminal information, which would be a legitimate purpose of such a hearing. *See* Gen. Refractories Co., 337 F.3d at 305 n.2 ("there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or ulterior purpose of benefit to the defendant"); *see also* Gebhart, 574 F. App'x. at 160 (plaintiff failed to support abuse of process claim where there were allegations of "an improper motive in initiating the suit, not in conducting it").

Though providing the police with false claims of criminal conduct and giving testimony reiterating that same fictitious conduct in court would be reproachable and potentially worthy of criminal repercussions, such actions would not appear to reflect a perversion of a process used for an illegitimate aim. Plaintiff has therefore failed to plead sufficient facts that would establish that there was an abuse of process. Defendant Sullum's motion to dismiss will thus be granted with respect to Plaintiff's state abuse of process claim.

> c. State tortious interference with employment claim against defendant Powell

To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to

harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. Crivelli v. Gen. Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000) (citing Strickland v. University of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

In determining whether a particular course of conduct is improper for purposes of setting forth a cause of action for tortious interference with prospective advantage, Pennsylvania courts have looked to Section 767 of the Restatement (Second) of Torts. This section provides the following factors for consideration: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the proximity or remoteness of the actor's conduct to interference, and (6) the relationship between the parties. Strickland, 700 A.2d at 985 (citing Triffin v. Janssen, 626 A.2d 571, 574 (Pa. Super. Ct. 1993)). It is unnecessary, however, for courts to weigh these factors at the pleading stage.

Plaintiff asserts that defendant Powell reached out beyond the typical duties of his office to contact the Pennsylvania Department of State and "intentionally mispresented the facts [] of the subject encounter and withheld exculpatory evidence in providing information to the Pennsylvania Office of Enforcement and Investigation." According to Plaintiff, these efforts to "transmit[] false information" about Stevens eventually led to the suspension

of Stevens' chiropractic license to practice. For professional chiropractors, it would be generally understood that a license to practice would be required to operate a chiropractic office. As Plaintiff operated such an office, Stevens Chiropractic, the loss of his license would seemingly impact either existing or prospective business with clients as he would be entirely unable to practice.

Though Plaintiff has failed to indicate what damages he actually incurred as a result of the loss of his license allegedly due to Powell's intervention outside the general assertion that Plaintiff "suffered severe loss of prospective patients/clients and actual loss of revenue," such issues of fact are better settled at the damages stage of the litigation than at the motion-to-dismiss stage. *See* Sidhu v. Mann, 2011 WL 900982, at *5 (M.D. Pa. Mar. 14, 2011) ("Defining a 'prospective contractual relation' is admittedly problematic .... [i]t is something less than a contractual right, something more than a mere hope." (quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979))). As such, the Plaintiff has sufficiently pled facts to support a claim for tortious interference with economic advantage, and defendant Powell's motion to dismiss this claim will be denied.

## IV. CONCLUSION

For the reasons discussed above, the Court will: **DENY** the DA Defendants' motion to dismiss as to Counts I, III and IV; **DENY** defendant

Sullum's motion to dismiss as to Count VI; **DENY** defendant Powell's motion to dismiss as to Count VIII; and **GRANT** the defendants' motions to dismiss as to the remaining Counts. A separate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 2, 2021**
20-1911-05.wpd