**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN STEVENS, <br><br>   Plaintiff, <br><br> v. <br><br> JESSI SULLUM, et al., <br><br>   Defendants. | CIVIL ACTION NO. 3:20-CV-01911 <br><br> (MANNION, J.) <br> (MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff John Stevens ("Stevens") initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 on October 16, 2020, against Defendants Jessie Sullum, Lackawanna County, District Attorney Mark Powell, Assistant District Attorney Judy Price, Detective Michelle Mancuso, Detective Chris Kolcharno, and Dominic J. Mastri, III (collectively, "Defendants"). (Doc. 1). On June 23, 2022, the parties participated in a telephonic discovery conference before the undersigned United States Magistrate Judge. (Doc. 69). Presently before the Court is a motion to compel the deposition of Assistant District Attorney Gene Ricarrdo ("Attorney Riccardo") and a request for negative inference filed by Stevens (Doc. 71), and a motion for protective order filed by Defendants Powell and Price. (Doc. 76). In addition, before the Court is a letter filed by Stevens with the Court regarding a discovery issue concerning newly acquired emails. (Doc. 81). For the following reasons, Stevens' motion to compel (Doc. 71) will be DENIED, and Defendants' motion for protective

order (Doc. 76) will be GRANTED. In addition, Stevens' discovery requests contained within the letter filed with the Court (Doc. 81) will be GRANTED.

I. **STANDARD OF REVIEW**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also Hasbrouck v. BankAmerica Hous. Servs.*, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.*, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).
>
> *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 37 of the Federal Rules of Civil Procedure authorizes a party to move to compel a party to comply with discovery obligations, and specifically provides that:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).

Under Rule 37, a court may issue an order compelling discovery where "a deponent fails to answer a question asked under Rule 30 or 31 [governing depositions on oral examination or written questions]." Fed. R. Civ. P. 37(a)(3)(B)(i). A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). "Once that initial burden is met, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Prime Energy & Chem., LLC v. Tucker Arensberg,*

- 3 -

*P.C.*, No. 2:18-CV-0345, 2022 WL 1642394, at *4 (W.D. Pa. May 24, 2022) (quoting *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

II. **DISCUSSION**

    A. <u>MOTION TO COMPEL</u>

In the instant motion, Stevens contends that Defendants improperly instructed Attorney Riccardo not to answer relevant factual questions and seeks "an adverse inference from the Court, on summary judgment and/or at trial, to the extent that he was unable as a result of improper instruction to obtain the evidence required to meet its burden."[1] (Doc. 71,

---

[1] Citing *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-CV-1029, 2008 WL 4822537, at *3 (W.D. Pa. Nov. 4, 2008), Stevens argues that "[i]mproper and baseless instructions not to answer are subject to adverse inference from the Court, on summary judgment and/or at trial." (Doc. 71, at 5). In *Aerosmith*, the court allowed the plaintiff to retake certain depositions where the counsel for the defendants improperly directed the witness not to answer, and permitted the plaintiff to "seek an adverse inference from the Court, on summary judgment and/or at trial, to the extent that it was unable as a result of improper instruction to obtain the evidence required to meet its burden." 2008 WL 4822537, at *3. However, the court cautioned that "any request for an adverse inference must be detailed and explicit, permitting the Court to understand where and how discovery was obstructed, and the express inference that should follow from such obstruction." *Aerosmith*, 2008 WL 4822537, at *3 n.4. In this case, Stevens has not provided a detailed and explicit request for an adverse inference and the Court rejects Stevens' argument that Defendants obstructed discovery during the deposition of Attorney Riccardo. *See Aerosmith*, 2008 WL 4822537, at *3 n.4. Furthermore, as discussed *infra*, the undersigned will deny Stevens the opportunity to conduct a second deposition of Attorney Riccardo as Defendants properly instructed him not to answer counsel for Stevens' questions where Attorney Guzzardo reiterated the same question multiple times which Attorney Riccardo had already answered. (Doc. 71, at 1). Moreover, the undersigned will grant Defendants' motion for protective order, preventing counsel for Stevens to re-depose Attorney Riccardo on the matter at issue. (Doc. 76). Therefore, Stevens' request for an adverse inference is **DENIED without prejudice** to the parties raising this issue again at the time of trial. (Doc. 71).

at 5). Stevens avers that "even if the fact witness Riccardo is re-deposed, [Stevens] will be irreparably prejudiced because the witness has had the opportunity to discuss his testimony with Attorney Scanlon as well [as] [Stevens]'s questions." (Doc. 71, at 6). In opposition, Defendants assert that Attorney Riccardo did, in fact, give complete answers to Stevens' questions and that he "was instructed not to answer one (1) question because [Stevens]'s counsel repeatedly asked Attorney Riccardo the same question over and over after it had been answered as to harass the deponent." (Doc. 74, at 5). Regarding Stevens' request for a negative inference in connection with Attorney Riccardo's deposition testimony, Defendants argue "Attorney Riccardo answered the question posed to him repeatedly and [Stevens] is not justified in seeking a re-deposition" because the objections by Defendants did not unduly interfere with the discovery process. (Doc. 74, at 6).

Stevens' motion to compel calls upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil Procedure to regulate the discovery in this case. As noted *supra*, issues related to the scope of discovery permitted under the Federal Rules rests in the sound discretion of the Court. *See Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 90 (3d Cir.1987). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. *See, e.g., Saldi,* 224 F.R.D. at 174; *Farmer's & Merchant's Nat'l Bank,* 174 F.R.D. at 585. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. *Marroquin–Manriquez,* 699 F.2d at 134.

Under Rule 37(a), "[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A). A party "may move for an order compelling . . . production[ ] or inspection"

where, e.g., "a party fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(iv). The Court is empowered to impose sanctions for failures to comply with discovery under Rule 37 and the Court's inherent powers. *Marsulex Envtl. Techs. v. Selip S.P.A.*, No. 1:15-CV-00269, 2019 WL 2184873, at *7 (M.D. Pa. May 21, 2019). "Through its sanctioning power under Rule 37, a court may direct that certain facts be taken as established, prohibit the sanctioned party from supporting or opposing certain claims or defenses, strike pleadings in whole or in part, stay proceedings, dismiss the action, render a default judgment, or treat the failure to obey court orders as contempt of court." *Marsulex Envtl. Techs.,* 2019 WL 2184873, at *7. The Court may also fashion appropriate sanctions for conduct (e.g., spoliation) that abuses the judicial process. *Marsulex Envtl. Techs.*, 2019 WL 2184873, at *7.

Rule 30(c)(2) of the Federal Rules of Civil Procedure, in turn, addresses the proper method of objecting to questions asked during a deposition, and provides very limited bases upon which a lawyer may instruct his client not to answer a question. Rule 30(c)(2) makes it clear that outside of three narrow areas, it is inappropriate for counsel to instruct a deponent not to answer a question asked during a deposition:

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary *to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)*.

Fed. R. Civ. P. 30(c)(2) (emphasis added).

The rules further provide for the possibility that sanctions may be imposed on any person who "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

In this regard, and particularly with respect to instructions by counsel for a deponent not to answer questions, the advisory committee notes to Rule 30 expressly observe that "[d]irections to a deponent not to answer a question can be even more disruptive than objections." Fed. R. Civ. P. 30, Advisory Committee Notes.

Attempts to limit the conduct of the deposition are governed by Rule 30(d)(3), which states in relevant part:

> (A) *Grounds.* At any time during a deposition, the deponent or a party may move to terminate or limit it *on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.* The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.
>
> (B) *Order.* The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c). If terminated, the deposition may be resumed only by order of the court where the action is pending.
>
> (C) *Award of Expenses.* Rule 37(a)(5) applies to the award of expenses.

Fed. R. Civ. P. 30(d)(3).

The Middle District Local Rules do not have a Rule 30(d)(3) equivalent. Local Rule 30.10 does, however, contain a provision requiring a meet and confer requirement to resolve redaction of objections from depositions to be used at trial.[2] This rule suggests that the better practice is to allow the deposition to proceed and deal with the objections before trial.

---

[2] Local Rule 30.10 provides:

If an oral or videotape deposition is to be used at trial, counsel for the party who intends to introduce such deposition shall file a certificate with the court at the final pretrial

Federal Rule of Civil Procedure 30 states that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). In ruling on a motion raised under Rule 30, "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B). Rule 26 allows this Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters [.]" Fed. R. Civ. P. 26(c)(1)(D). Finally, this Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case[.]" Fed. R. Civ. P. 26(b)(2)(C)(iii); see Scott v. Lackey, No. CIV.A. 1:02-CV-1586, 2008 WL 2444518, at *2 (M.D. Pa. June 13, 2008).

In his motion to compel, Stevens asserts that Attorney Riccardo failed to answer questions as a result of Defendants' inappropriate instruction not to answer a question. (Doc. 71, at 3). Specifically, Stevens claims that Attorney Riccardo failed to answer deposition

---

conference stipulating that the attorney has conferred with counsel for the opposing party in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact. It shall be the duty of counsel to make good faith efforts to remove such portions of such depositions prior to trial. If a videotape transcript is not available, counsel shall preview the videotape in order to comply with this rule. If the court finds that any counsel failed in good faith to seek to remove such portions, the court may make such order as is just, including an order that the entire deposition be read against a party, or that the entire deposition be excluded.

questions regarding "which of Sullum's allegations set forth in the affidavit of probable cause were inaccurate and incredible." (Doc. 71, at 3). Stevens submits "[w]hether or when Defendants believed Sullum's statements were true or untrue is [a] separate issue that would have been addressed had Defense counsel permitted Plaintiff's counsel to ascertain the answer to his questions." (Doc. 71, at 3). Defendants assert that the objections were made "to present a motion under Rule 30(d)(3)," because "Attorney Riccardo answered the question posed to him repeatedly and [Stevens] is not justified in seeking a re-deposition . . . where the objections made by counsel did not unduly interfere with the discovery process." (Doc. 74, at 5-6). Defendants contend "Attorney Guzzardo's poor and harassing attitude toward Attorney Riccardo during the course of his deposition and in response to his exhaustive responses by repeatedly asking the same question to the deponent is an obvious effort to annoy and harass him." (Doc. 77, at 6). Defendants further state "[t]he question has been answered and any objection made by counsel was appropriate as it did not impede the discovery process; but rather, simply stopped the continued harassment of the deponent by Plaintiff's counsel." (Doc. 77, at 6). Accordingly, Defendants assert "a protective order should be granted so as to forbid the continuing effort by Plaintiff's counsel to harass and annoy Attorney Riccardo." (Doc. 77, at 6).

The relevant portions of the deposition of Attorney Riccardo are as follows:

Q. At what point do you obtain the criminal history of a victim?

> MR. SCANLON: Objection. It's been asked and answered. Come on, Joe. Let's go.
>
> MR. GUZZARDO: You can answer.
>
> THE WITNESS: Prior to trial.

> MR. SCANLON: He answered it. Let's go Joe.
>
> MR. GUZZARDO: No, he didn't. He said – he told me when he disseminated it. He didn't say –
>
> MR. SCANLON: He answered it 10 minutes ago.
>
> MR. GUZZARDO: No, he didn't. Want to get the judge on the phone again?
>
> MR. SCANLON: Yeah. Go ahead. Call the judge again. Get her on.
>
> MR. GUZZARDO: Just answer the question. This is so ridiculous.
>
> MR. SCANLON: Get her on the phone. He's not answering it again.
>
> MR. GUZZARDO: We'll not that on the record and then that will also be an issue that will likely come up in summary judgment, that you will not let him answer that question.

(Doc. 71-3, Tr. of Riccardo Dep. 47:16-48:18, June 23, 2022).

Q. Okay. Which of the underlying allegations did you feel were not accurate?
A. I think that statement comes from the text messages, the testimony of Dominic Mastri, and also the non-compliance of the judge in getting information from her all undermines the entire case.

Q. What I'm looking at is what specific underlying allegations do you feel are not accurate?

> MR. SCALON: Objection. Go ahead.
>
> THE WITNESS: I mean, accuracy and credibility is one in the same term in my mind.

Q. Then why were both words used?

A. I don't know. And if I used them, so be it. Like I said, I'm not sure I was the one that did this.

Q. As you sit here today, do you believe that all of Jessi Sullum's allegations are 100 percent accurate?

A. I believe they are. I told you I do believe her. I believe that she didn't sign up for what happened in there. Again, I believe she went there with intentions – with certainly flirtatious intentions, but I don't think she signed up for what happened and I think your client did what he did.

That's based on – that's based on, you know, by 18, 19 years of experience here at the DA's office in addition to the 404(b) evidence was very relevant for me, you know, and also the photographs and the DNA evidence. So all of that taken together in my mind was I believe her.

The problem is though, you know, you're dealing with, you know, 12 jurors who are coming from all walks of life and those –you know, one inconsistency can hurt a case, but here we have now several inconsistencies, which I just think when you keep adding up and then when Dominic Mastri's statement is made, I think that really impacted, you know, her credibility or trying to prove her credibility in front of 12 strangers.

And that's really –like our burden of proof is beyond a reasonable doubt, It's a real high burden of proof. And based on that new evidence that we received, you know, I just had my doubts that I think the right thing to do was if we don't think we can win the case, you know, we should withdraw. And then we had that difficult conversation with Jess, you know, before we filed a nolle pros.

([Doc. 71-3](Doc. 71-3), Tr. of Riccardo Dep. 120:20-122:22, June 23, 2022).

Q. This is what I'm trying to understand Mr. Riccardo. You, Michelle Mancuso, Chris Kolcharno, Mark Powell, Judy Price, they all said the same thing. You all said that despite all of the evidence you believed Jessi Sullum. Now, if she can convince five lawyers, detectives, then why were you of the opinion that you couldn't win a jury trial?

MR. SCANLON: Objection. It's been asked and answered five times.

THE WITNESS: I think I've answered it. We can't predict who our jurors are going to be. My experience has been there's never a slam dunk case ever. There's always something that comes up in the trial. And I've had to overcome, you know, credibility issues that I thought I was able to overcome, and I've lost cases as a result of it.

I just thought the hill that we were climbing got even steeper, and I just thought it was my obligation that if I didn't think I had a decent chance of meeting my obligation to prove the case beyond a reasonable doubt, I had an obligation to at least make a recommendation to my

- 11 -

> boss to withdraw the charges. I wasn't happy about it, but it happened, and it is what it is. We don't choose our victims.

Q. Just so we're clear, because, again, I ask a question and you talk for like 40 minutes, but you didn't really address it. My question to is –

> MR. SCANLON: Yes, he did.
>
> THE WITNESS: I think I did.
>
> MR. SCANLON: You keep going around in circles.
>
> MR. GUZZARDO: Not really.
>
> MR. SCANLON: He had to testify over a period of time so it gets through your head what he's testifying to. Again, he's not answering any more questions with regard to that question. If you want to get the judge on the phone, please do so now.

Q. Tell me which of the underlying allegations are not accurate?

> MR. SCANLON: Objection. It's been asked and answered. He's not answering it anymore.
>
> MR. GUZZARDO: Answer the question.
>
> MR. SCANLON: No. No.
>
> MR. GUZZARDO: Is that a true statement? Is it a true statement?
>
> MR. SCANLON: Objection. Asked and answered.
>
> MR. GUZZARDO: That's not answered.
>
> MR. SCANLON: He's answered it.
>
> MR. GUZZARDO: Let's call the judge.
>
> MR. SCANLON: Call her again.

(Doc. 71-3, Tr. of Riccardo Dep. 123:13-126:4, June 23, 2022).

Upon review of the transcript, the submissions of the parties, and applicable legal standards, the Court finds that counsel properly instructed Attorney Riccardo not to answer the questions presented. (Doc. 71; Doc. 71-3; Doc. 74; Doc. 76; Doc. 77). The rules are structured to minimize disruption during the deposition process. *See Maurer v. Williams*, No. 1:11-CV-2260, 2013 WL 1438092, at *5 (M.D. Pa. Apr. 9, 2013). Thus, the Court finds that the discovery sought, at the end of the day, appears to be cumulative and/or duplicative, such that the Court must deny Stevens' request to depose Attorney Riccardo a second time.

Accordingly, the Court denies Stevens' request for a second deposition of Attorney Riccardo. (Doc. 71).

B. MOTION FOR PROTECTIVE ORDER

Defendants have filed a motion for protective order pursuant to Fed. R. Civ. P. 26(c) to "preclude the re-deposition of Attorney Riccardo as it pertains to the one question that has been repeatedly asked and answered, i.e. 'tell me which of the underlying allegations are not accurate?'" (Doc. 77, at 5). Defendants argue the protective order is necessary "to forbid the continuing effort by Plaintiff's counsel to harass and annoy Attorney Riccardo." (Doc. 77, at 6).

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Although all relevant material is discoverable unless an applicable evidentiary privilege is asserted, Federal Rule of Civil Procedure 26(c) establishes that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."

Fed. R. Civ. P. 26(c). The burden of showing "good cause" rests with the party seeking the protective order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986). The moving party must show with specificity that "disclosure will work a clearly defined and serious injury to the party." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (citing *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). "Good cause" cannot simply rest on "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Cipollone*, 785 F.2d at 1121. Furthermore, even when the moving party has met its burden for a protective order, such an order "must be narrowly drawn as to not constitute an abuse of discretion." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 529 F. Supp. 866, 892 (E.D. Pa. 1981).

Within the United States Court of Appeals for the Third Circuit, seven factors have been recognized in evaluating where "good cause" exists:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.
>
> *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787–91).

The District Court is best positioned to decide which factors are relevant to the dispute at issue, and thus to "prevent both the overly broad use of [confidentiality] orders and the unnecessary denial of confidentiality for information that deserves it." *Pansy*, 23 F.3d at 789.

Here, the Court finds that Defendants have met the pleading certification of good faith requirement of Rule 37(a). Directing the Court's attention to the same line of questioning as noted *supra*, Defendants argue "[d]uring the course of Attorney Riccardo's deposition, Attorney Guzzardo asked the same question to Attorney Riccardo repeatedly so as to harass and annoy the deponent in violation of the federal rules of civil procedure." (Doc. 76, at 1). Defendants state "Attorney Riccardo gave a complete and thorough response to the question posed by Attorney Guzzardo and good cause is established by a review of the exchange between Attorney Guzzardo and Attorney Riccardo." (Doc. 77, at 6). Upon review of the record, Defendants appear to have acted in good faith in instructing Attorney Riccardo not to answer upon the belief that Stevens' questions has been "asked and answered" or in a manner that annoyed the dependent. As discussed *supra*, the Court finds that counsel properly instructed Attorney Riccardo not to answer the questions presented by Attorney Guzzardo. (Doc. 71; Doc. 71-3; Doc. 74; Doc. 76; Doc. 77). In addition, the Court finds that the discovery sought by Stevens, at the end of the day, appears to be cumulative and/or duplicative, such that the Court denied Stevens' request to depose Attorney Riccardo a second time. (Doc. 71).

Accordingly, the Court grants Defendants' motion for protective as to the narrow issue of precluding the re-deposition of Attorney Riccardo regarding the question: "tell me which of the underlying allegations are not accurate?" (Doc. 76).[3]

---

[3] The Court believes that the deposition of Attorney Riccardo was completed but for this outstanding issue. If there were other matters on which Attorney Riccardo was to be deposed, but was not due to the deposition being cut short to address this issue, the Court will allow Attorney Riccardo's deposition to be reconvened for questioning on other matters, and only if the same would be allowed and in accordance with the Federal and Local Rules of Civil Procedure.

### C. Discovery regarding Undisclosed Emails

On September 5, 2022, Stevens filed a letter with the Court addressing a discovery matter that pertains to newly acquired emails from Defendants. (Doc. 81). Counsel for Stevens seeks a Court Order granting the following: (1) "the opportunity to have an independent forensic computer expert conduct a search of Defendants' server using the same terms previously propounded;" and (2) "the opportunity to re-depose Powell and Price about the content of the new emails which go to the heart of [Stevens]'s case." (Doc. 81, at 2). In a conference call held by the Court on August 7, 2022, Defendants agreed to present Powell and Price to be re-deposed on the very limited topics of the newly acquired emails and their previous answers to prior questioning in light of the newly acquired emails. As such Stevens' request to re-depose Powell and Price on these narrow topics is granted. (Doc. 81). However, Defendants objected to Stevens' request to obtain an independent forensic computer expert to conduct a search of Defendants' server.

As noted *supra,* federal courts have broad discretion in managing discovery. *Marroquin-Manriquez*, 699 F.2d at 134. A forensic investigation of a litigant's computer is a non-routine "intrusion" that may be ordered "as a sanction after a litigant has failed to preserve evidence, equivocally responded to discovery or otherwise resisted discovery." *Brooks Grp. & Assocs., Inc. v. Levigne*, No. 2:12-CV-02922, 2013 WL 3557258, at *2 (E.D. Pa. July 15, 2013). Courts have ordered forensic investigations to be performed to determine whether electronically stored information was deleted or withheld. *See, e.g.*, *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687-88 (S.D. Fla. 2012) (ordering forensic investigation to find electronically stored information where party had refused to adequately search its own records); *AMG Nat'l*

*Trust Bank v. Ries*, No. 06-CV-04337, 2011 WL 3099629, at *5 (E.D. Pa. July 22, 2011) (ordering forensic investigation to determine the extent of spoliation of evidence where there was evidence that the defendant had deleted computer files); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010) (ordering forensic investigation of computer to find electronically stored information that defendants had withheld from discovery); *Aliki Foods, LLC v. Otter Valley Foods, Inc.*, 726 F. Supp. 2d 159, 173 (D. Conn. 2010) (noting previous order in which court had ordered forensic investigation to recover deleted emails and determine whether deletions were intentional); *Koosharem Corp. v. Spec Personnel, LLC*, No. 6:08-CV-00583, 2008 WL 4458864, at *2 (D.S.C. Sept. 29, 2008) (ordering forensic investigation where defendant had failed to produce relevant documents); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008) (ordering forensic investigation to recover relevant emails that defendant deleted); *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 676-77 (M.D. Fla. 2008) (ordering forensic investigation of computer to find electronically stored information that plaintiff had withheld from discovery); *see also Amfosakyi v. Frito Lay, Inc.*, 496 F. App'x 218, 220-21 (3d Cir. 2012) (upholding Middle District of Pennsylvania's granting of summary judgment and sanctions motions where district court had previously ordered forensic investigation of plaintiff's computer and forensic investigation established that plaintiff had falsified evidence).

In his request, Stevens explains that in February of 2022, Stevens sent Defendants written electronic discovery requests that requested: "All e-mails sent to or from Judy Price and Mark Powell from the period of March 27, 2018 through August 29, 2019, that include any of the following terms: "John Stevens or Stevens." (Doc. 81, at 1). Stevens states

Defendants produced a single email/correspondence between Powell and a public relations firm/individual names Paul Lyon, from July 2019. (Doc. 81, at 1; Doc. 81-1, at 1-7). Thereafter, Stevens subpoenaed Paul Lyon's emails and obtained additional emails that date back to before Stevens' arrest in November of 2018, which Stevens claims has revealed Defendants intentionally withheld emails and Powell used his private email account in connection with the Stevens case. (Doc. 81, at 1; Doc. 81-2, at 1-8). In opposition, Defendants submit that Stevens' electronic discovery request served upon Defendants in early February 2022 included over two hundred search terms. (Doc. 82, at 1). Defendants claim Stevens' "assertion that any document was intentionally withheld is unjustified and wrong," because "[a] formal electronic search for the documents was performed in good faith and completed utilizing the search 'terms' that were selected by [Stevens]. All of the documents that were found were produced to counsel." (Doc. 82, at 1).

Based upon the record which reveals additional emails were acquired pertaining to Stevens' prior electronic discovery requests only after Paul Lyon's emails were subpoenaed, the Court grants Stevens' request to obtain an independent forensic computer expert to conduct a search of Defendants' server to search and produce emails from all accounts used in connection with Stevens' case. *See Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, No. 2:19-CV-698, 2021 WL 7966873, at *1 (W.D. Pa. July 23, 2021) (ordering forensic investigation to find electronically stored information where party failed to produce responsive documents); *Marsulex Env't Techs.*, 2019 WL 2184873, at *12 (ordering forensic investigation to find electronically stored information where party failed to properly preserve and produce evidence). However, Stevens must limit the temporal and term scope of the independent

expert's search to maintain privacy and confidentiality. As the requesting party, Stevens is responsible for payment of the fees and costs charged by the independent computer forensics expert.

III. **CONCLUSION**

For the foregoing reasons, Stevens' motion to compel and request for negative inference (Doc. 71) is **DENIED**, and Defendants' motion for protective order (Doc. 76) is **GRANTED**. In addition, the requests contained within Stevens' letter filed with the Court (Doc. 81) are **GRANTED**.[4]

An appropriate Order follows.

**BY THE COURT:**

**Date: September 9, 2022**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**

---

[4] Given the often acrimonious nature of the discovery proceedings in this matter, the Court feels compelled to remind counsel that practice before this Court is governed both by the Pennsylvania Rules of Professional Conduct and the Middle District of Pennsylvania Code of Professional Conduct. L.R. 83.23.2 (adopting Pa. R. Prof 'l Conduct and Middle District of Pennsylvania Code of Professional Conduct). Counsel's attention is directed to the following specific provisions and admonished to incorporate them into their professional practice, at least in connection with any litigation before this Court:

> *2. I will treat with civility and respect the lawyers, clients, opposing parties, the court and all the officials with whom I work. Professional courtesy is compatible with vigorous advocacy and zealous representation. Even though antagonism may be expected by my client, it is not part of my duty to my client.*

> *6. I will earnestly attempt to resolve differences through negotiation, expeditiously and without needless expense.*

Counsel must make a more concerted effort to behave in a civil and collegial manner. Antagonistic conduct should be curtailed.