UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN STEVENS,<br><br>                Plaintiff,<br><br>    v.<br><br>JESSI SULLUM, et al.,<br><br>                Defendants. | CIVIL ACTION NO. 3:20-CV-01911<br><br>(MANNION, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff John Stevens ("Stevens") initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 on October 16, 2020, against Defendants Jessie Sullum, Lackawanna County, District Attorney Mark Powell, Assistant District Attorney Judy Price, Detective Michelle Mancuso, Detective Chris Kolcharno, and Dominic J. Mastri, III (collectively, "Defendants"). (Doc. 1). On June 23, 2022, the parties participated in a telephonic discovery conference before the undersigned United States Magistrate Judge. (Doc. 69). Presently before the Court is a letter filed by counsel for Stevens requesting the disclosure of two documents that Defendants have asserted work product privilege over. (Doc. 86). For the following reasons, Stevens' request will be GRANTED.

I. **RELEVANT BACKGROUND**

The following is a recitation of relevant events and documents. In February of 2022, Stevens sent Defendants written discovery requests that requested: "All e-mails sent to or from Judy Price and Mark Powell from the period of March 27, 2018 through August 29, 2019, that include any of the following terms: 'John Stevens or Stevens.'" (Doc. 85, at 1). In response, Defendants produced a single email/correspondence between Powell and a public

relations firm/individual, Paul Lyon of Lyon Strategic Communications, LLC ("Lyon"), in July of 2019. (Doc. 85-1, at 1-7). Stevens subsequently served a subpoena on Lyon, and a copy of that subpoena was sent to counsel for Defendants, requesting production of "any and all documents, including but not limited to: emails, correspondence, communications, contracts, written agreements, reports, statements, presentations including notes and drafts thereof, billing records, payment invoices involving the Lackawanna District Attorney's office or DA Mark Powell, the case of Commonwealth with John Stevens and the case of Stevens v. Sullum et. al." (Doc. 85, at 1-2; Doc. 85-2, at 1-5). Upon receipt of the subpoena on August 9, 2022, counsel for Defendants stated: "Can you please let us know when you receive anything pursuant to the subpoena?" (Doc. 85-2, at 2).

On September 2, 2022, Lyon Strategic Communications produced additional emails between Powell, Price, and Lyon dating back to November of 2018, when Stevens was about to be arrested. (Doc. 85-3, at 2-8). On September 9, 2022, the Court permitted Stevens to inspect Defendants' servers with an independent forensic computer expert in order to determine if additional email should have been produced. (Doc. 83; Doc. 84). On the same day, Lyon produced text messaged between himself and Powell discussing the instant civil action and billing records. (Doc. 85-4, at 1-6). In addition, on September 9, 2022, counsel for Defendants sent an email to counsel for Lyon stating:

> Based upon our recent conversation, I understand that you are in possession of two (2) documents (one dated June 26, 2019 and one dated July 25, 2019) that were authored by my client, Mark Powell, Esq. Based upon my review of these documents, I hereby assert a work product privilege and direct you not to produce these documents to Plaintiff's counsel in connection with the subpoena that has been served upon your client, Lyon Strategic Communications, LLC. I anticipate that the Court will address this issue accordingly.

(Doc. 85-5, at 1).

On September 12, 2022, counsel for Stevens filed a letter with the Court regarding subpoenaed non-party, Lyon's, refusal to produce certain documents based upon Defendant Powell's claim that the documents are protected by the work product privilege. (Doc. 85). On September 13, 2022, counsel for Defendants filed a letter with the Court responding to Stevens' letter and providing the Court with confidential copies of the contested documents. (Doc. 86). On the same day, Stevens filed a letter with the Court responding to Defendants' letter. (Doc. 87). The Court held a telephonic discovery conference on September 13, 2022, where the parties discussed the issue before the Court. (Doc. 88).

II. **STANDARD OF REVIEW**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also Hasbrouck v. BankAmerica Hous. Servs.*, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.*, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's

resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

*Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

> Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

A. WORK PRODUCT DOCTRINE

The work product doctrine serves to "promote[ ] the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). This privilege, also recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), applies to criminal as well as civil litigation. *United States v. Nobles*, 422 U.S. 225, 238 (1975). The work product doctrine directly promotes the adversary system, whereas the attorney-client privilege serves to directly promote the attorney-client relationship.

*Westinghouse Elec. Corp.*, 951 F.2d at 1428. The Supreme Court of the United States has said that the work product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Nobles*, 422 U.S. at 238, n.11.

Under Federal Rule of Civil Procedure 26(b)(3)(A), materials "prepared in anticipation of litigation or for trial by or for another party or its representative" are ordinarily shielded from discovery. The doctrine applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) . . ." *In re Cendent Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) (quoting Fed. R. Civ. P. 26(b)(3)). Further, the privilege extends not only to materials prepared for the present litigation, but also to those "prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983). Rule 26(b)(3) establishes two types of work product: first, general documents and tangible things that are prepared in anticipation of litigation, and second, work product that consists of "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation." *Cendent Corp.*, 343 F.3d at 663 (quoting Fed. R. Civ. P. 26(b)(3)). The second type is referred to as "core" or "opinion" work product and "is discoverable only upon a showing of rare and exceptional circumstances." *Cendent Corp.*, 343 F.3d at 663. "Opinion work product protection is not absolute, but requires a heightened showing of extraordinary circumstances." *Cendent Corp.*, 343 F.3d at 664. The

party seeking the protection of the work product doctrine has the burden of proving that the doctrine applies. *Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

III. **DISCUSSION**

In Stevens' letter, counsel argues that Defendants' actions and omissions are procedurally improper and demonstrate bad faith. (Doc. 85, at 3). First, Stevens argues that Defendants have waived their right to object to the production of contested documents based on the work product privilege because Powell was served with a copy of the subpoena served on Lyon "over a month ago and responded only by asking for a copy of documents obtained." (Doc. 85, at 3). Second, Stevens contends "it is completely improper for [Lyon] to withhold documents from [Stevens'] counsel while at the same time producing these documents to Defendant where *no one has objected to the subject subpoena*." (Doc. 85, at 4). Third, Stevens avers the work product privilege does not apply in these circumstances because the documents were authored by Defendant Powell on June 26, 2019, and July 25, 2019, a year and a half before Stevens filed the instant civil action, and at the same time that Defendants were dropping Stevens' criminal charges. (Doc. 85, at 4). Thus, Stevens asserts "these documents were not prepared in anticipation of litigation – rather they were prepared in the context of *ceasing* criminal prosecution." (Doc. 84, at 4). In opposition, Defendants contend there is no waiver of the work product privilege and that the privilege was timely reserved because the document was identified: "Work Product Confidential Memo," when Defendants were first made aware of the privileged documents. (Doc. 86, at 2). Defendants argue the work product privilege clearly applies in these circumstances because the documents arose within the context of Powell consulting and communicating with Lyon, a third-party public relations

firm, for the purpose of formulating legal strategy and rendering legal assistance regarding pending litigation and potential new litigation arising out of Stevens' arrest. (Doc. 86, at 2).

### A. Defendants have not waived the work product privilege doctrine.

In some circumstances the work product privilege can be waived. *Maldonado v. N.J. ex rel. Admin. Off. of Courts*, 225 F.R.D. 120, 127 (D.N.J. 2004). Waiver of the work product doctrine may occur where the party asserting the privilege has disclosed the material in a manner that "substantially increases the possibility of an opposing party obtaining the information." *Maldonado*, 225 F.R.D. at 127 (quoting *U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1989)). "The predicate of the waiver inquiry in the work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary." *Cooper Health Sys. v. Virtua Health, Inc.*, 259 F.R.D. 208, 215 (D.N.J. 2009) (citation and quotation marks omitted). Here, there is no indication that Defendants disclosed the disputed documents to an adversary. Therefore, the Court finds that there was no waiver of the work product privilege.[1]

---

[1] The Court notes, as it did at the time of the latest teleconference in this matter, that it is unclear under what authority Lyon contacted Defendant's counsel regarding the documents at issue. Rule 45 of the Federal Rules of Civil Procedure requires that "[a] person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in amanner that, without revealing information itself is privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). The Court does not see anywhere in the Rules that would permit a party responding to the subpoena to circumvent responding to the subpoena by contacting another party entirely. Rule 45 clearly outlines the method for quashing or modifying a subpoena, including where responding to the subpoena would require disclosure of priviledged or other protected matter. Fed. R. Civ. P. 45(d)(3). Although it does appear based on the information before the Court that Lyon, the subpoenaed party, did fail to obey

B. THE DOCUMENTS ARE NOT PROTECTED BY THE WORK PRODUCT PRIVILEGE DOCTRINE.

Defendants assert that the work product privilege prevents disclosure of the contested documents. (Doc. 86, at 1-2). Conversely, Stevens avers that the work product doctrine is inapplicable because these documents were not prepared in anticipation of future litigation as they were prepared in June and July of 2019, a year and a half before he initiated the instant civil case and at a time that Defendants were dropping the criminal charges against Stevens. (Doc. 85, at 4). Further, Stevens argues the protection from disclosure offered by the work product doctrine requires a more immediate showing that the remote possibility of litigation. (Doc. 85, at 5) (citing *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (Fed. Cl. 2000); *AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 445 (2007)).

The party claiming the privilege bears the burden of demonstrating that the materials are work product. *Conoco, Inc.*, 687 F.2d at 730. The work product doctrine precludes discovery of documents and other tangible items which were (1) created in reasonable anticipation of litigation by or for a party and (2) prepared primarily for the purpose of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 508 (1947); Fed. R. Civ. P. 26(b)(3). The doctrine "'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *Cendant Corp.*, 343 F.3d at 661–62 (quoting *Nobles*, 422 U.S. at 238). It protects not only materials created by the attorney, but

---

the subpoena without adequate excuse, the Court declines to hold Lyon in contempt at this time. See Fed. R. Civ. P. 45(g).

also those created with "the assistance of investigators and other agents." *See Nobles*, 422 U.S. at 238.

First, the document must have been created in reasonable anticipation of litigation. The relevant inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993) (quoting *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979)). The court considers the author's subjective state of mind and whether the anticipation of litigation is objectively reasonable. *See In re Grand Jury Proceedings*, 604 F.2d at 1260; *Advanced Tech. Assocs. v. Herley Indus., Inc.*, No. 96-CV-0132, 1996 WL 711018, at *6 (E.D. Pa. Dec. 5, 1996). The doctrine protects "material prepared or collected before litigation actually commences" but at least "some possibility of litigation must exist." *See In re Grand Jury Investigation*, 599 F.2d at 1229. At a minimum, there must be some "litigation on the horizon." *See In re Grand Jury Subpoena*, 745 F.3d 681, 694 (3d Cir. 2014). The Third Circuit makes clear that the materials must be prepared in anticipation of litigation, and not in the ordinary course of business. *Muse-Freeman v. Bhatti*, No. 07-CV-3638, 2008 WL 2165147, at *1 (D.N.J. May 21, 2008). Otherwise, the privilege does not apply. *Muse-Freeman*, 2008 WL 2165147, at *1.

Second, the document must have been prepared primarily for the purpose of litigation. *See Martin*, 983 F.2d at 1260-61; *Advanced Tech. Assocs.*, 1996 WL 711018, at *6. "Even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product [doctrine] still depends primarily on the reason or purpose

- 9 -

for the document production." *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003). The doctrine does not apply to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" even if those materials are later useful in litigation. *See* Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment; *Martin*, 983 F.2d at 1260.

The work product doctrine is not absolute. There is an exception where the document is "otherwise discoverable," and a party shows "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See* Fed. R. Civ. P. 26(b)(3).

Relying on *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2738 (FLW) (LHG), 2021 WL 3144945 (D.N.J. July 26, 2021), Defendants contend the work product privilege doctrine prevents disclosure of the contested documents. (Doc. 86, at 2). In *In re Johnson & Johnson*, the New Jersey District court found that comments on draft press releases and memoranda by in-house counsel and outside personal relations consultants were privileged under the attorney-client privilege. 2021 WL 3144945, at *7. The court explained that "[s]ince J&J's litigation counsel were explicitly or implicitly asked for and subsequently provided their legal analysis of the drafts prepared by in-house personnel and outside P.R. consultants, the attorney-client privilege applies to the challenged documents with counsel's comments." *In re Johnson & Johnson*, 2021 WL 3144945, at *7. However, the court noted:

> Although counsel's comments on draft press releases are privileged, it is not the case that all of counsel's comments on the draft press releases are protected by the work-product doctrine. The dominant or predominate purpose of some of J&J's press releases and publications was to foster and protect J&J's reputation

> rather than aiding in the defense of existing or threatened litigation. Counsel's comments on these documents do not satisfy the criteria for work-product protection. General public relations advice, even if it bears on litigation, does not qualify for work-product protection. A media campaign is not a litigation strategy. *Egiazaryan v. Zalmavey*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013). Rather, the work-product doctrine protects communications concerning the litigation itself, not the effects of the litigation on a company's customers, the media, or on the public generally. *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).
>
> *In re Johnson & Johnson*, 2021 WL 3144945, at *8.

Based on the Court's *in camera* review, the Court finds that the materials are not protected by work product privilege. First, the Court agrees with Stevens that the contested materials were not created for the predominant purpose of obtaining legal advice, or in order to prepare for litigation. Defendants assert the materials are protected by work product privilege because they arose in the context of Powell communicating and consulting with an outside public relations firm regarding ongoing and potential litigation. (Doc. 86, at 2). Further, the Court notes there is no indication that the documents were produced *in anticipation of litigation*. Rather, it appears that the documents were created in anticipation of *ceasing criminal prosecution* in the underlying criminal case. Although Powell was a representative of the Commonwealth in the underlying criminal case as the prosecutor, he was not acting as a representative of Defendants in this case by authoring the documents. Moreover, Powell did not create the documents for Defendants in this case. Rather, he created them within the context of consulting and communicating with Lyon, a third-party public relations firm, for the purpose of obtaining legal assistance and formulating legal strategy regarding the underlying criminal case. In addition, the Court finds that the documents were not created for the purpose of aiding in future possible litigation, rather, the documents simply

express Lyon's beliefs with respect to the Defendants' actions in the underlying criminal case and Powell's reaction to those beliefs. Like the discovery matter discussed in *In re Johnson & Johnson*, it cannot be said that the dominant or predominate purpose of the emails/communication between Powell and Lyon was to aid in the defense of existing or threatened litigation. *See In re Johnson & Johnson,* 2021 WL 3144945, at *8. Therefore, the usual requirements of work product privilege protection are not satisfied. *See U.S. v. Rockwell Intern.,* 897 F.2d 1255, 1266 (3d Cir. 1990).

Some courts have extended the work product privilege to protect materials produced by non-parties, if disclosing the materials would interfere with the *Hickman* purposes of the privilege: protecting attorneys' ability to prepare their cases, preventing opposing parties from free-loading off the other's work, ad avoiding disruption of ongoing litigation." *In re Student Fin. Corp.*, No. 02-11620-JBR, 2006 WL 3484387, at *11-12 (E.D. Pa. Nov. 29, 2006). As this Court has already determined, in relying on *In re Student Fin Corp.*, disclosing documents related to the underlying terminated criminal case are not necessarily privileged. *Stevens v. Sullum*, 2021 WL 2784818, at *3 (M.D. Pa. 2021). Here, disclosing the emails/communication between Powell and Lyon would not implicate these purposes, because the materials do not contain Powell's trial preparation formulations, the documents do not represent legal work that Stevens could utilize in his own preparation for the instant case, and the documents are related to a terminated criminal case. Therefore, the work product privilege does not apply to Powell's non-party materials.

Accordingly, the Court finds that Defendants have not met the burden of demonstrating that the contested documents are protected under the work product privilege.

- 13 -

With respect to the contested materials, Defendants' objections are overruled, and the documents shall be produced.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Stevens' request for the production (Doc. 85) is **GRANTED**, Defendants' objections (Doc. 86) are **OVERRULLED**, and Lyon is directed to produce the subpoenaed documents to Stevens.

An appropriate Order follows.

**BY THE COURT:**

Date: **September 26, 2022**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**