## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOHN STEVENS,

                Plaintiff,

    v.

JESSI SULLUM, et al.,

                Defendants.

CIVIL ACTION NO. 3:20-CV-01911

(MANNION, J.)
(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff John Stevens ("Stevens") initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983 on October 16, 2020, against Defendants Jessie Sullum, Lackawanna County, District Attorney Mark Powell and Assistant District Attorney Judy Price ("DA Defendants"), Detective Michelle Mancuso, Detective Chris Kolcharno, and Dominic J. Mastri, III (collectively, "Defendants"). (Doc. 1). Presently before the Court are a number of discovery disputes – an issue regarding the appropriate search terms and procedure by which Stevens' computer expert will conduct a forensic computer search (Doc. 94), a motion to quash third-party subpoena (Doc. 105), a motion for leave to file and serve supplemental interrogatories (Doc. 121), and a motion to compel production of email attachments (Doc. 125).[1] The undersigned will now address each issue in turn.

---

[1] On January 10, 2023, the DA Defendants filed a response to Plaintiff's motion to compel, asserting that the motion is now moot because the DA Defendants produced the requested email attachments to Plaintiff's counsel via email on January 9, 2023. (Doc. 141). Based upon this assertion, it appears that the DA Defendants have satisfied their burden of production and Plaintiff's motion to compel will be **DENIED as MOOT**. (Doc. 125).

In addition, the undersigned notes that there is a pending motion to amend scheduling order to extend case management deadlines. (Doc. 99). Upon review of the Court's Order

I.   **STANDARD OF REVIEW**

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also Hasbrouck v. BankAmerica Hous. Servs.*, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.*, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

> *Halsey v. Pfeiffer*, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery, and provides as follows:

---

dated February 3, 2023, extending case management deadlines in accordance with the parties' requests, the motion to amend scheduling order will be **DENIED** as **MOOT**. (Doc. 154).

Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

II. **DISCUSSION**

   A. FORENSIC COMPUTER SEARCH

On September 9, 2022, the undersigned entered an Order granting Plaintiff's request to obtain an independent forensic computer expert to conduct a search of Defendants' server to search and produce emails from all accounts used in connection with Plaintiff's case, including any relevant emails from Defendants' computers, hard drives, storage devices, and any other devices that have a reasonable likelihood of containing discovery data. (Doc. 84). The undersigned further directed Plaintiff to provide Defendants with proposed search terms. (Doc. 84). On September 20, 2022, Plaintiff provided Defendants with proposed search terms to which Defendants objected. (Doc. 111-1, at 1-4).

On September 26, 2022, counsel for the DA Defendants filed a letter with the Court providing explanation for each objection raised and requesting that Plaintiff "provide to the Court the procedure by which his computer expert will conduct the forensic computer search and request that the Lackawanna County Solicitor be present when such search is conducted." (Doc. 94, at 1). The DA Defendants generally object to Plaintiff's requests for electronic discovery "to the extent that each request seeks information and documents

protected by the attorney-client privilege or attorney work-product privilege or is otherwise protected from disclosure including but not limited to trade secrets, confidential commercial information or information which is otherwise propriety information subject to a joint defense privilege or information which is otherwise confidential." (Doc. 94, at 3). Specifically, Defendants object to Plaintiff's requests 7 through 9 based upon the attorney-client/work-product privileges, and to any forensic search of the DA Defendants' private email servers as no evidence has been produces to date that warrants such a search. (Doc. 94-1, at 3). On November 8, 2022, Plaintiff filed a letter with the Court responding to each of Defendants' objections. (Doc. 111). On December 29, 2022, Plaintiff filed a letter with the Court requesting leave to conduct the forensic computer examination beyond the current discovery deadline of February 15, 2023, or, alternatively, requesting Defendant to produce the filed that are not currently in dispute. (Doc. 136).

On January 6, 2023, counsel for the DA Defendants filed a letter with the Court requesting an in-person discovery conference to resolve the outstanding discovery issues. (Doc. 139). The DA Defendants state that Plaintiff has thus far failed to identify his forensic computer expert or to meet and confer with the DA Defendants to define the temporal scope of the forensic computer search. (Doc. 139, at 1). At the discovery conference, the parties notified the Court that a forensic computer expert has been identified and the temporal scope has been defined. (Doc. 111-1). Regarding the requested search terms to be used in searching for responsive documents, the parties have agreed to meet and confer once again prior to the Court's intervention. If the parties still cannot agree, the Court will decide the search terms.

B.  <u>DA Defendants' Private Email Servers and Private Cell Phone</u>

DA Defendants object to any search of their private email servers "as no evidence has been produced to date that warrants such a search." (Doc. 94, at 1). Also, the DA Defendants "object to any access to the private cell phone of Attorney Judy Price, as Judge Mannion has previously ruled that the Plaintiff does not have the right to discovery of Attorney Price's cell phone." (Doc. 94, at 1). In opposition, Plaintiff argues that the DA Defendants' objection should be overruled because "Defendant has already produced *some* responsive emails from Mark Powell's private AOL Account. Thus, Defendants' statement that 'no evidence has been produced to date that warrants such a search' is ridiculous at best and bad faith at worst."[2] (Doc. 111, at 2; Doc. 111-2). In addition, Plaintiff asserts that the private cell phones of Defendants Powell and Price are discoverable. Specifically, Plaintiff claims "Defendant Price testified that the district attorney office does not provide work phones and that she uses her private cell phone for work related matters." (Doc. 111-1, at 1 n.1). Plaintiff contends "it is undisputed that Defendant [Powell] regularly texted with a reporter and Paul Lyon from

---

[2] As noted *infra*, this case has been riddled with discovery disputes and contentious argument between all counsel. The Court understands that the nature of litigation is adversarial and may become heated. ***All counsel*** are reminded of their obligations under the Pennsylvania Rules of Professional Conduct and the Middle District of Pennsylvania's Code of Professional Conduct. Specifically, Rule 3.4 prohibits a lawyer from asserting "the lawyer's personal opinion as to the justness of a cause…" Pa. R.P.C. 3.4(c). This Court's Code of Professional Conduct requires counsel admitted to this Bar to "treat with civility and respect the lawyers, clients, opposing parties, the court and all the officials with whom I work." The Code further notes that "[p]rofessional courtesy is compatible with vigorous advocacy and zealous representation. Even though antagonism may be expected by [a] client, it is not part of [counsel's] duty to [his] client." Counsel should refrain from describing each other's work in this manner in all future proceedings, and all counsel should treat each other professionally and civilly and in accordance with the Rules and Code of Professional Conduct.

his personal cellphone regarding Plaintiff's case," citing to the following deposition testimony by Paul Lyon, Mark Powell's public relations consultant:

> Q: Did you ever correspond with Mark Powell in his private e-mail account?
>
> A: Yes.
>
> (Doc. 111, at 2; Doc. 111-3, Paul Lyon Dep. Tr. 17:16-18, Oct. 12, 2022).

Defendants' objections will be sustained. First, the undersigned declines to contradict the Court's oral Order entered on November 12, 2021, denying Plaintiff's discovery request for Defendant Price's phone records. (Doc. 49). On December 5, 2022, Judge Mannion denied Plaintiff's untimely motion for reconsideration of the Court's oral Order denying Plaintiff access to Defendants Price's private phone records, finding that Plaintiff has not come forward with any new evidence that would justify the Court's reconsideration of its Order. (Doc. 118). Defendants' objection to the production of Price's private cell phone is sustained.

Second, the Court finds that a search of the DA Defendants' private email servers is not warranted because it appears that the forensic search of the DA Defendants' computer server will sufficiently produce any responsive documents. Upon consideration of the email communication between Attorney Powell and Paul Lyon, it appears that all exchanges were either forwarded to or from the DA Defendants' server. (Doc. 85-1). There is no further evidence to suggest that the DA Defendants did not continue the practice of forwarding all emails either to or from the DA Defendants' server. Therefore, it follows that the forensic computer search of the DA Defendants' server will produce any existing exchanges through private email accounts. Without further evidence to suggest that the DA Defendants used

private email accounts to communicate regarding Plaintiff or the instant lawsuit outside of the above-mentioned practice, the Court is compelled to sustain the DA Defendants' objections to Plaintiff's discovery request regarding the DA Defendants' private email servers.

C. Requests for Discovery from Co-Counsel and Witness Counsel

In discovery requests 7, 8, and 9, Plaintiff request electronic discovery of "emails sent between counsel James Scanlon, Esquire and Dave Saba, Esquire coordinating or referencing the subpoena served upon Paul Lyon and documents produced" (Doc. 111-1, at 4). "emails sent from counsel James Scanlon, Esquire to counsel David Heisler, Esquire and/or any member of their offices as well as any emails sent from David Heisler, Esquire to James Scanlon, Esquire and/or any member of their offices coordinating, discussing, or referencing their discovery responses, including but not limited to the compilation and confirmation of completeness of the responses to Plaintiff's document requests and/or discovery disputes from the period of October 16, 2020 through the present" (Doc. 111, at 2-3), and "[a]ll emails sent between counsel James Scanlon, Esquire and counsel Tim Hinton, Esquire coordinating or referencing the depositions of Sara Varela and/or Brian Gallagher." (Doc. 111, at 3). Dave Saba is counsel for Paul Lyons, a non-party in this case. David Heisler is counsel for Defendants Mancuso and Kolcharno, detectives with the Lackawanna County District Attorney's Office. Tim Hinton is counsel for Sara Varela and Brian Gallagher, non-parties in the case but witnesses and employees of the Lackawanna County District Attorney's Office.

The DA Defendants object to these requests, asserting that it seeks "documents protected from disclosure by the attorney-client privilege, deliberate process privilege, attorney work-product doctrine, or any other applicable privileges." (Doc. 94-1, at 3).

1. **Form of the DA Defendants' Objections**

The DA Defendants may not object to a discovery request by merely stating certain privileges apply without providing an explanation to support the privilege assertion. Pursuant to Rule 26(b)(5), the party claiming privilege or seeking to protect trial-preparation materials must "expressly make the claim." Fed. R. Civ. P. 26(b)(5)(A)(i). The party must also "describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Additionally, to the extent that DA Defendant raises deliberate process privilege, which authorizes the government to withhold from production documents which contain "confidential deliberations of law or policymaking, reflecting opinions, recommendations, or advice," the DA Defendants bear the initial burden of establishing its applicability, and must present "more than a bare conclusion or statement that the documents sought are privileged." *Johnson v. Miskell*, No. 1:16-CV-0841, 2017 WL 3701784, at *3 n.2 (M.D. Pa. Aug. 28, 2017) (quoting *Redland Soccer Club, Inc. v. Dep't of the Army of the United States*, 55 F.3d 827, 853 (3d Cir. 1995)).

Further, "a proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) (quoting *Foster v. Berwind Corp.,* Civ. A. No. 90–0857, 1990 WL 209288, at *2 (E.D. Pa. Dec. 10, 1990)). Where, as here, the court relies on privilege logs:

> [T]ypically the logs will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.

> Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

*SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) (quoting *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)).

Attorney-client privilege, or work-product protection, are "not satisfied by mere conclusive or *ipsa dixit* assertions." *SmithKline Beecham Corp.*, 232 F.R.D. at 482 (quoting *Am. Health Sys., Inc. v. Liberty Health Sys.,* Civ. A. No. 90–3112, 1991 WL 42310, at *5 (E.D. Pa. Mar. 26, 1991)).

The DA Defendants have not properly raised these objections on the bases of the privileges they identify, and they have not provided a privilege log. Notwithstanding the improper, broadly asserted objections made by the DA Defendants, the Court will address attorney-client privilege and work-product privilege below in an effort to streamline further discovery in this matter, which has thus been rife with contentious disagreement and argument among counsel throughout the entire course of discovery.

## 2. **Attorney-Client Privilege**

The DA Defendants assert that attorney-client privilege precludes the production of all of the materials requested by these three requests. "Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1423 (3d Cir.1991). As this Court outlined in *Dempsey v. Bucknell University*, 296 F.R.D. 323, 327 (M.D.Pa. 2013):

For the attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.' " *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 359 (3d Cir.2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, *"Restatement (3d) Lawyers"*]). " 'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Teleglobe,* 493 F.3d at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Teleglobe,* 493 F.3d at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *Teleglobe,* 493 F.3d at 361.

The attorney-client privilege serves laudable purposes and thus is "[w]orthy of maximum protection." *Haines v. Liggett Group Inc.,* 975 F.2d 81, 90 (3d Cir.1992). Nevertheless, the privilege obstructs the truth-finding process and is to be construed narrowly. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). The privilege "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse Elec. Corp.*, 951 F.2d at 1423 (citing *Fisher v. United States,* 425 U.S. 391, 403 (1976)). "The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege." *In re Grand Jury,* 603 F.2d 469, 474 (3d Cir. 1979) (citing among other cases *United States v. Landof,* 591 F.2d 36, 38 (9th Cir.1978)). At argument on the outstanding discovery disputes in this matter, counsel for the DA Defendants admitted that neither Mr. Saba, Mr. Heisler, nor Mr. Hinton were clients of Mr. Scanlon, and he did not identify another basis for asserting attorney-client privilege. As such, there is no attorney-client relationship between Mr. Scanlon and these individuals, and attorney-client privilege would not attach to any communications between them.

### 3. **Attorney Work-Product Privilege**

The DA Defendants also assert that work-product privilege precludes the production of the materials requested by these three requests. Initially, the Court notes that as to Request 7, the communications between Mr. Scanlon and Mr. Saba, that request implicates the issues presented on appeal before Judge Mannion, and as such, the Court will defer ruling on this objection until that appeal is resolved. The Court addresses the privilege's application to Requests 8 and 9.

> The work-product doctrine, as it applies to discovery matters, is governed by Federal Rule of Civil Procedure 26(b)(3). "The work product doctrine is governed by a uniform federal standard set forth in Fed.R.Civ.P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.' "
> *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 661–62 (3d Cir.2003).

The purpose of the work-product doctrine differs from that of the attorney-client privilege.... [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients. *Westinghouse,* 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 268 F.R.D. 114, 117 (D.D.C.2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.,* 86 F.R.D. 603, 627 (D.D.C.1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. *If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.*
> *Rail Freight Fuel Surcharge,* 268 F.R.D. at 118 (emphasis added); *see also Restatement (Third) Lawyers* § 87 cmt. h ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

The party claiming work product protection has the burden of proving that the material was in fact prepared in anticipation of litigation. *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 138 (3d Cir.2001). Like the attorney-client privilege, the work-product privilege

is to be strictly construed. *See, e.g., Cooper Hospital/University Medical Center v. Sullivan,* 183 F.R.D. 119, 128 (D.N.J. 1998) (citing *Westinghouse Elec. Corp.,* 951 F.2d at 1429).

"Work product prepared in the ordinary course of business is not protected from discovery." *Jones v. Nationwide Mut. Fire Ins. Co.,* No. CIV.A 3:08-CV-2202, 2010 WL 181753, at *1 (M.D. Pa. Jan. 12, 2010) (citing *Sullivan,* 183 F.R.D. at 128). "Even after litigation is justifiably anticipated, routine or ordinary investigations or reports are not work-product and may be obtained as normal discovery without a special showing of need." *Harper v. Auto-Owners, Inc. Co.,* 138 F.R.D. 655, 661 (S.D. Ind. 1991); *see also American Home Assurance Co. v. United States,* Civ. A. No. 09-CV-258 (DMC), 2009 WL 3245445, at *2 (D.N.J. Oct.7, 2009) (*quoting Harper,* 138 F.R.D. at 661)).

> An insured seeking documents and reports in his insurer's claims file presents a special problem for application of the work product rule because it is the very nature of an insurer's business to investigate and evaluate the merits of claims. Reports and documents produced for this purpose will likely be relevant to later litigation over a claim as well . . . . Most courts have held that documents constituting any part of a factual inquiry into or evaluation of a claim, undertaken in order to arrive at a claim decision, are produced in the ordinary course of an insurer's business and not work product.

*Harper,* 138 F.R.D. at 662 (*citing Schmidt v. California State Auto. Ass'n,* 127 F.R.D. 182, 184 (D. Nev. 1989)).

Protection of the work-product doctrine may be waived if the document is disclosed to an adversary. *Westinghouse,* 951 F.2d at 1429. "There is no bar to extending attorney-client privilege to inter-attorney communications. To the contrary, 'privilege also attaches . . . to inter-attorney communications . . . which include legal advice or confidential information received from the client." *SmithKline Beecham Corp. v. Apotex Corp.,* 232 F.R.D. 467, 481 (E.D. Pa. 2005) (quoting *In re U.S. Healthcare, Inc. Sec. Litig.,* No. 88-0559, 1989 WL 11068, at *1

(E.D. Pa. Feb. 7, 1989)). The goal of the work-product doctrine is to "promote[ ] the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse,* 951 F.2d at 1428 (*citing Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947); *U.S. v. AT & T,* 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

Based upon Plaintiff's description of the requested emails between Mr. Scanlon and Mr. Heisler and those between Mr. Scanlon and Mr. Hinton, it appears that such communication, e.g., coordinating discovery responses, may be protected by attorney work-product privilege. Relying on Plaintiff's description of the materials, they appear to be: confidential communications where an attorney is providing information to co-counsel in order to request or secure legal services or legal advice; confidential communications where counsel is providing or rendering legal advice to co-counsel; confidential communications from an attorney for the purpose of requesting or securing legal advice or legal services from co-counsel; confidential communications from an attorney requesting information for the purpose of providing legal advice or legal services to co-counsel; or confidential communications between co-counsel forwarding information and legal advice for the purpose of formulating further legal advice and providing legal services. *See SmithKline Beecham Corp.,* 232 F.R.D. at 481. Moreover, the communication appears that it may have been made in anticipation of further litigation. *See* Fed. R. Civ. P. 26(b)(3)(A).

Accordingly, the Court finds that these requests may fall within the protection of the attorney work-product privilege. However, as noted *supra*, the DA Defendants have not

properly raised these objections within a sufficient privilege log (or in this case, with any privilege log). As such, it is impossible to determine whether the documents sought are actually protected by privilege.

D. MOTION TO QUASH THIRD-PARTY SUBPOENA

On October 14, 2022, Plaintiff's counsel served Defendants with a "Notice to Serve Subpoena to Produce Documents and Things for Discovery pursuant to Rule 45" (the "Notice") upon Sweda Advertising, 120 North Abington Road, Clarks Green, Pennsylvania 18411. (Doc. 106, at 1). An Addendum to the Subpoena states:

> Please provide any and all documents, including but not limited to: emails; correspondence; communications; contracts; written agreements; report(s), statement(s), or presentation(s) including any notes and/or drafts thereof; billing records; and/or payment invoices involving the Lackawanna County District Attorney's Office or D.A. Mark Powell, the case of Commonwealth v. John Stevens Docket Number: 19 CR 311. The case of Stevens v. Sullum et al. 3:20-CV-1911, John Stevens, DC, Jessi Sullum (a/k/a/ Jessi Morgan) or Judge Janine Edwards.

(Doc. 106, at 1-2).

According to the DA Defendants, Sweda Advertising is an advertising agency located in Northeastern Pennsylvania that provided political advertising services, letterhead design, political polling, political sign creation design, and political strategy services to Attorney Mark Powell during his political campaigns for Lackawanna County District Attorney, an elected position. (Doc. 106, at 2).

Federal Rule of Civil Procedure 45 "establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013). "A subpoena under Rule 45 'must fall within the scope of proper discovery under [Federal Rule of Civil

Procedure] 26(b)(1).' " *First Sealord Sur.*, 918 F. Supp. 2d at 382 (quoting *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. 08–2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)).

Under Rule 45, it is within the sound discretion of district courts to "ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands." *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, No. 3:16-CV-2470, 2017 WL 2212505, at *1 (M.D. Pa. May 17, 2017).

Federal Rule of Civil Procedure 45(d)(3)(A) requires a court, upon motion, to quash or modify a subpoena that, among other things, "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). The party moving to quash such a subpoena "bears a 'heavy burden' of demonstrating that an enumerated basis for quashing the subpoena exists." *Malibu Media, LLC v. Doe*, No. 4:15-CV-2281, 2016 WL 524248, at *2 (M.D. Pa. Feb. 10, 2016).

"'Generally speaking, a party does not have standing to quash a subpoena served on a third party.'" *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001); *see also Davis v. Gen. Accident Ins. Co. of Am.*, No. 98–4736, 1999 WL 228944, at *2 (E.D. Pa. Apr. 15, 1999) ("Ordinarily, only the non-parties whom were served with the subpoenas may move to have them quashed under Federal Rule of Civil Procedure 45([d])(3)(A)."). An exception to this rule exists, however, where "the party seeks to quash based on claims of privilege relating to the documents being sought." *Thomas*, 202 F.R.D. at 434; *First Sealord*, 918 F. Supp. 2d at 382 ("An exception to this rule permits a party to move to quash when it 'claims some personal right or privilege in respect to the subject matter of a subpoena . . . directed to a nonparty.'" (quoting *Davis*, 1999 WL 228944, at *2)).

16

A Rule 45 subpoena served in conjunction with discovery must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). *See, e.g., Roesburg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296 (E.D. Pa. 1980) ("[t]o voice a successful objection to an interrogatory, [a party] cannot simply intone this familiar litany. Rather, [a party] must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive"); *see also Rivera v. DHL Global Forwarding*, 272 F.R.D. 50, 55 (D.P.R. 2011) (noting that a party must "specifically detail the reasons why" a request is irrelevant). Parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense—including . . . the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discoverable information. Fed. R. Civ. P. 26(b)(1). The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion,* No. 96-CV-372, 1996 WL 653114, at *1 (E.D. Pa. Nov. 1, 1996).

Here, as a party to this action, the DA Defendants ordinarily do not have standing to quash the third-party subpoena directed to Sweda Advertising, unless they are able to demonstrate some personal interest in, or privilege with respect to, the subpoena's subject matter – all documents involving the Lackawanna County District Attorney's Office or Defendant Powell. (Doc. 106, at 1-2). In support of his proposed subpoena, Plaintiff has made the following proffer of relevance:

> Plaintiff obtained a memorandum that Defendant Mark Powell purportedly solely drafted while Powell was dismissing criminal charges against Plaintiff.

(The Powell Memorandum or The Memo). The Powell Memorandum contradicts much of Defendants' deposition testimony. Crucially, the Memo states that Defendants do not believe Defendant Jessi Sullum was telling the truth when she claimed that Plaintiff sexually assaulted her.

The Powell Memorandum is a word document that Plaintiff obtained from serving a similar third-party subpoena upon similar business entity - public relations firm, Lyon Strategic Communications. It is undisputed that the metadata associated with the Powell Memorandum indicates that an individual named Cara Browning originally authored the memo. *See* Exhibit "A" – metadata. Cara Browning formerly worked at Sweda Advertising. Thus, any information that Powell provided to Sweda Advertising is clearly relevant and within the scope of permissible discovery.

(Doc. 109, at 2) (footnote omitted).

In moving to quash the subpoena, the DA Defendants attempt to establish standing by maintaining that the proposed subpoena "seeks private and confidential documents and is overly broad and irrelevant to the Plaintiff's claims." (Doc. 106, at 2).[3] The DA Defendants contend Sweda Advertising has no involvement whatsoever in Plaintiff's criminal prosecution or the instant lawsuit and "[t]here is no evidentiary basis for the Plaintiff's endeavor to obtain political polling, marketing, or media design information from Sweda Advertising to support his claims for an alleged civil rights violation." (Doc. 106, at 4). The DA Defendants aver Plaintiff's subpoena is a "fishing expedition," arguing that:

To the extent that the Plaintiff claims that it has reviewed 'metadate' that suggests Sweda Advertising is authoring documents (see Doc. 99), pleadings, or memoranda on behalf of the Lackawanna County District Attorney's Office, such suggestion is incorrect as the likely 'metadata' search is noting an origination of certain documents from Sweda Advertising due to its 'design' of the Lackawanna County District Attorney Office's letterhead. Sweda Advertising simply designed a logo and letterhead for the district attorney's

---

[3] Again, despite asserting a privilege, the DA Defendants have only broadly done so and have failed to do so via any sort of privilege log.

> office and had no involvement whatsoever in the Plaintiff's criminal
> prosecution or the instant lawsuit.
>
> . . .
>
> There is no evidentiary basis for the Plaintiff's endeavor to obtain political
> polling, marketing, or media design information from Sweda Advertising to
> support his claims for an alleged civil rights violation.

(Doc. 106, at 3-4).

Nevertheless, the DA Defendants do not object to a request upon Sweda Advertising to produce any documents relative to the DA Defendants and Plaintiff. (Doc. 106, at 4).

The Court finds that the possible relevancy of the subpoenaed information uncertain at best. Plaintiff's request for "any and all documents, including but not limited to: emails; correspondence; communications; contracts; written agreements; report(s), statement(s), or presentation(s) including any notes and/or drafts thereof; billing records; and/or payment invoices involving the Lackawanna County District Attorney's Office or D.A. Mark Powell," is overly broad and seeks information that is not relevant to any claims in this action.(Doc. 106, at 1). Plaintiff has failed to meet its burden of establishing how the subpoenaed documents, particularly Powell's billing records and/or payment invoices, are "reasonably calculated" to lead to discoverable information apart from Plaintiff's assertion that Sweda Advertising was involved in Defendant Powell's political campaign and that both Sweda Advertising and Lyons Strategic Communications employed the services Cara Browning. Therefore, considering the DA Defendants' lack of objection to Sweda Advertising producing any documents relative to the DA Defendants and Plaintiff, the Court finds that Plaintiff has not satisfactorily explained why "there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Delhagen v. McDowell,* No.

3:08–CV–00285, 2010 WL 5230910, at *2 (M.D. Pa. Dec. 16, 2010). In the absence of such an explanation "the balancing standards-relevance, need, confidentiality and harm," *Mannington Mills, Inc. v. Armstrong World Indus., Inc.,* 206 F.R.D. 525, 529 (D.Del.2002), weighs against production of this information through a third-party subpoena.

Accordingly, the DA Defendants' motion to quash the third-party subpoena will be granted, and Plaintiff's proposed subpoena will be quashed without prejudice to Plaintiff producing a modified notice to serve a subpoena upon third-party, Sweda Advertising, that only requests the production of any and all documents relative to Plaintiff's claims in the present lawsuit regarding the DA Defendants.

E.  MOTION FOR LEAVE TO FILE AND SERVE SUPPLEMENTAL INTERROGATORIES

On December 12, 2022, Plaintiff filed a motion for leave to serve supplemental interrogatories upon all Defendants. (Doc. 121). Plaintiff explains that although Defendants have appealed the undersigned's Order directing non-party Paul Lyon to produce the Powell Memorandum, "Judge Mannion has indicated that Plaintiff is free to 'ask defendants' questions about the memo.'" (Doc. 133, at 2). Thus, Plaintiff seeks to question Defendants regarding the contents of the Powell Memorandum and written electronic materials. (Doc. 133, at 2-3).

In opposition, Defendant Sullum argues that the additional discovery should not be permitted because it is designed solely to further embarrass her, would not be for a legitimate purpose, is unnecessary, and there is no basis set forth in the motion or supporting memoranda to factually support further interrogatories addressed to Sullum. (Doc. 128, at 4; Doc. 137, at 2, 4). Similarly, the DA Defendants argue that Plaintiff is not entitled to serve

additional interrogatories because the discovery sought is unreasonably cumulative and duplicative, and can be obtained through more convenient, less burdensome, and in a less expensive manner. (Doc. 132, at 3). The DA Defendants assert: (1) the proposed electronic discovery requests remain pending before the Court; (2) the issues surrounding the Powell Memorandum are subject to the DA Defendants' present appeal of non-dispositive discovery motion and supplemental briefing that is not ripe for disposition; (3) Lyons Strategies produced the additional documents that Plaintiff claims the DA Defendants did not produce; and (4) Plaintiff will have the opportunity to ask the DA Defendants additional questions when they are re-deposed per the Court's Order permitting additional deposition testimony should the Court permit the disclosure of the Powell Memorandum. (Doc. 132, at 2). Finally, Defendants Mancuso and Kolcharno argue that the topics covered in the Powell Memorandum have already been addressed in the deposition of the appropriate Defendants and additional interrogatories are not necessary. (Doc. 135, at 2).

Considering the parties' filings and arguments contained therein, Plaintiff's motion for leave to serve supplemental interrogatories will be denied without prejudice to Plaintiff revisiting this issue upon resolution of the forensic computer search and the appeal pending before Judge Mannion.

III.   **CONCLUSION**

The parties are directed to meet and confer regarding the proposed forensic electronic computer search terms and to provide a joint status report to the Court within 30 days, or on or before **Monday, March 27, 2023**. The DA Defendants' objections to Plaintiff's request to

conduct a forensic electronic search of the DA Defendants' private email servers and cell phones are **SUSTAINED** and Plaintiff's request is **DENIED**.

Defendants' objections to Plaintiff's electronic discovery requests 7, 8, and 9 are **SUSTAINED IN PART AND OVERRULED IN PART**. The Court will defer ruling on Request 7 until the resolution of the appeal pending before Judge Mannion. With respect to the remaining requests, the Court finds generally that the DA Defendants have not met their burden at this juncture of establishing that any of the emails sought by Plaintiffs are protected by privilege, mainly because the DA Defendants have made blanket objections asserting a number of privileges, without the production of a privilege log or identification of specific documents with detailed objections. As such, the Court directs that the DA Defendants shall provide such a log to Plaintiff in response to its requests. Upon review of the log, counsel may seek review of the log and/or documents to which a privilege might apply for a final determination of the privilege by the Court. In raising privilege objections, the parties should keep the Court's review of attorney-client and work-product privilege in mind. Further, The privilege log must establish on a document-by-document basis "sufficient detail to show a prima facie basis to support" the claimed protection. *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 WL 605347, at *2 (D.Del. 2022); citing *In re Joy Global, Inc.,* 2008 WL 2435552, at *5 (D. Del. June 16, 2008). The log, therefore, must set "forth facts that, if credited, would suffice to establish each element of the" claimed protection. *Id.* The parties should redact partially privileged documents and produce non-privileged portions, including attachments. Where documents, particularly emails or email chains, contain both privileged and non-privileged portions, the producing party should redact the privileged portions and

produce the rest. *Id.;* citing *Elm 3DS Innovations, LLC v. Samsung Electronics Co. Ltd.,* 2021 WL 4819904, at *4 (D. Del. Oct. 15, 2021); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 864 (3d Cir. 1994). If, after a review of their respective privilege logs in light of the above guidelines and after any adjustments to such, remaining disputes will be resolved by an *in camera* review.

The DA Defendants' motion to quash the third-party subpoena is **GRANTED**, without prejudice to Plaintiff producing a modified notice to serve a subpoena upon third-party, Sweda Advertising. Plaintiff's motion for leave to serve supplemental interrogatories is **DENIED** without prejudice to Plaintiff revisiting this motion upon resolution of the forensic computer search and appeal pending before Judge Mannion. Finally, Plaintiff's motion to compel (Doc. 125) and the motion to amend the scheduling order to extend case management deadlines (Doc. 99) are **DENIED as MOOT**.

An appropriate Order follows.

BY THE COURT:

Date: **February 24, 2023**                    *s/ Karoline Mehalchick*
                                                         **KAROLINE MEHALCHICK**
                                                         **Chief United States Magistrate Judge**