UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN STEVENS, | : |
| Plaintiff | : CIVIL ACTION NO. 3:20-1911 |
| v. | : (JUDGE MANNION) |
| JESSI SULLUM, et al., | : |
| Defendants | : |

# MEMORANDUM

Before the court is an appeal filed by defendants District Attorney Mark Powell and Assistant District Attorney Judy Price ("DA Defendants") of Judge Mehalchick's discovery order granting Plaintiff's request for disclosure of a memorandum drafted by DA Powell (the "Powell Memo" or "Memo"). (Doc. 95). The appeal requires this court to determine whether Judge Mehalchick clearly erred in finding the work product doctrine inapplicable to the Powell Memo. A well-established exception to the work product doctrine provides that if the attorney's conduct is a central issue in the case, the work-product doctrine does not apply. The Powell Memo was drafted by DA Powell whose alleged conduct is a central issue in this case. Therefore, the work product protection does not apply to the Powell Memo. The court will thus **AFFIRM** Judge Mehalchick's order and **DENY** the appeal.

I.  **BACKGROUND**[1]

At issue in DA Defendants' appeal is the applicability of the work product doctrine to a memorandum authored by Defendant Powell in the context of the criminal prosecution of Plaintiff underlying this civil rights action (the "Powell Memo"). (Doc. 96). The Powell Memo is responsive to Plaintiff's document subpoena served on third-party Paul Lyon of Lyon Strategic Communications, LLC ("Lyon"). While Judge Mehalchick's order also granted Plaintiff's request for production of an email containing a statute that was marked up by Defendant Powell, DA Defendants' only appeal the order with respect to the Powell Memo. (Docs. 95, 96). After conducting a discovery conference call and reviewing the documents *in camera*, Judge Mehalchick issued an order granting Plaintiff's request for production of the documents. (Docs. 92 & 93). DA Defendants appealed that order and filed a supporting brief. (Doc. 96). Plaintiff filed a brief in opposition, (Doc. 98), to which DA Defendants replied, (Doc. 103). This court held oral argument on the appeal, after which the court ordered supplemental briefing on the work product privilege and deliberative process privilege as applied to the Powell Memo. The parties filed their briefs shortly thereafter. (Docs. 123, 138, 145).

---

[1] Since Judge Mehalchick stated the procedural and factual background of this case in her Memorandum, it is not fully repeated herein. (*See* Doc. 92).

**II.   STANDARD OF REVIEW**

When a United States Magistrate Judge decides a non-dispositive motion, the district court sitting on appeal may only reverse the judge's decision if the ruling is "clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1)(A); *see* Fed. R. Civ. P. 72(a) (reiterating the statutory standard); M.D. Pa. L. R. 72.2 (same). A ruling is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *PA Prison Soc. v. Cortes*, 622 F.3d 215, 231 (3d Cir. 2010) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). This means the court must accept the judge's factual determination unless that determination "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data[.]" *Haines*, 975 F.2d at 92 (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972)). A finding is contrary to law if the magistrate judge misinterpreted or misapplied applicable law. *Alarmax Distributors, Inc. v. Honeywell Int'l Inc.*, No. 2:14CV1527, 2015 WL 12756857, at *1 (W.D. Pa. Nov. 24, 2015).

Findings supported by the record are not clearly erroneous, even if the record could support a different conclusion. *Anderson*, 470 U.S. at 573–74 ("Where there are two permissible views of the evidence, the factfinder's

choice between them cannot be clearly erroneous."). Along the same lines, the court is not entitled to reverse Judge Mehalchick's Order simply because it would have decided the case differently. *PA Prison Soc.*, 622 F.3d at 231 (citing *Anderson*, 470 U.S. at 573). Judge Mehalchick's ruling, then, is accorded significant deference. Since DA Defendants filed this appeal, "[they] must clear a high hurdle to compel this court to overturn a magistrate judge's decision of a non-dispositive pretrial matter." *Nothstein v. USA Cycling*, 337 F.R.D. 375, 384 (E.D. Pa. 2020).

**III.   DISCUSSION**

**A. Work Product Doctrine**

The work product doctrine derives from Rule 26(b)(3) of the Federal Rules of Civil Procedure and the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), and precludes disclosure of documents and other tangible items which were (1) created in reasonable anticipation of litigation by or for a party and (2) prepared primarily for the purpose of litigation. "Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991) (citing *Hickman*, 329 U.S. at

- 4 -

510–11). The doctrine protects materials "prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983).

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.' " *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 663 (3d Cir. 2003)).

The burden of demonstrating that a document is protected as work product rests with the party asserting the doctrine. *Conoco Inc. v. U.S. Dep't of Just.*, 687 F.2d 724, 730 (3d Cir. 1982). The burden is significant because privileges "are not lightly created nor expansively construed." *United States v. Nixon*, 418 U.S. 683, 710 (1974). Indeed, the work product doctrine "must be strictly confined within the narrowest possible limits consistent with the

logic of its principle." *In re Grand Jury Proc.*, 604 F.2d 798, 802 (3d Cir. 1979) (internal quotation marks and citations omitted).

Here, Judge Mehalchick found, in relevant part, that DA Powell did not draft the Powell Memo in anticipation of litigation, and thus the Memo was not entitled to work product protection. Specifically, Judge Mehalchick found that, rather than drafting "in anticipation of litigation," DA Powell drafted the Powell Memo "in anticipation of *ceasing criminal prosecution* in the underlying criminal case." (Doc. 92 at 11) (emphasis in original). DA Defendants say this was clear error because the Powell Memo consists of DA Powell's mental impressions, conclusions, opinions and/or legal theories pertaining to a then-active criminal prosecution. (Doc. 96). DA Defendants argue further that DA Powell drafted the Powell Memo in anticipation of a potential malicious prosecution claim from Plaintiff and in anticipation of potential ancillary litigation before the Disciplinary Board related to alleged attorney misconduct discussed in the memorandum. (Doc. 96 & 123). Plaintiff says Judge Mehalchick was correct in declining work product protection because the Powell Memo was created in anticipation of terminating criminal prosecution.

"The question whether a document was prepared in anticipation of litigation is often a difficult factual matter." *United States v. Rockwell Int'l*, 897

F.2d 1255, 1266 (3d Cir. 1990). The relevant inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (citing *Rockwell Int'l*, 897 F.2d at 1266). As the Third Circuit explained:

> Only by looking to the state of mind of the party preparing the document . . . can we determine whether this test has been satisfied. Thus, that person's "unilateral belief" that litigation will result is the initial focus of the inquiry into whether the report was prepared "in anticipation of litigation." The rule is limited, however, by the requirement that the preparer's anticipation of litigation be objectively reasonable.

*Id.* "Even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product [doctrine] still depends primarily on the reason or purpose for the document production." *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003). For example, the doctrine does not apply to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" even if those materials are later useful in litigation. *Martin*, 983 F.2d at 1260.

As the reader can probably glean from the summary of the law and arguments thus far, the issue presented by this appeal is a difficult one. The

question of the work product doctrine's application to the Powell Memo contains both a thorny factual issue—*i.e.*, DA Powell's state of mind when drafting the Memo—and what seems to be a novel legal issue—*i.e.*, whether drafting a memorandum in anticipation of ceasing criminal prosecution is synonymous with drafting "in anticipation of litigation." The novelty of the latter legal issue is demonstrated by the parties' fruitless—but no doubt tireless—search for analogous case law. (*See* Doc. 123, DA Defendants' Supplemental Brief) ("there is no case directly on point"); (Doc. 138, Plaintiff's Supplemental Brief) ("Plaintiff was unable to find a case directly on point").

All told, the obscurity that remains after multiple briefs, supplemental briefs, and over an hour of oral argument likely demonstrates DA Defendants, as appellants, have not shown clear error in Judge Mehalchick's thorough, well-reasoned opinion. Regardless, the court need not delve into the thorny factual issue regarding DA Powell's state of mind, nor the novel legal issue described above because, even if DA Powell drafted the Powell Memo in anticipation of litigation, a well-established exception to the work product doctrine applies on this record.

As important as the work product doctrine is to the proper functioning of the adversarial system, it is not without judicious exceptions. One such exception is when the work product concerns the activities of counsel that

are directly in issue in the litigation. Indeed, "[m]any courts faced with the issue of the production of opinion work product have recognized an exception to Rule 26(b)(3) protection for work product which concerns the activities of counsel that are directly in issue." *Pace-O-Matic, Inc., v. Eckert Seamans Cherin & Mellott, LLC*, No. 1:20-CV-00292, 2021 WL 5330641, at *8 (M.D. Pa. Nov. 16, 2021) (collecting cases); *see also* 8 Richard L. Marcus, Federal Practice and Procedure §2026 (3d ed. 2020) ("[C]ourts have found such disclosure justified principally where the material is directly at issue, particularly if the lawyer or law firm is a party to the litigation."). For example, the prosecutor and law-enforcement defendants in *Bolus v. Carnicella* could not shield their opinion work product from disclosure because their mental impressions and legal strategy in the underlying criminal prosecution "form[ed] the heart of Plaintiffs' case."[2]

This exception makes sense when we remember the purpose of the work product doctrine: to "promote[] the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients," *Westinghouse*, 951 F.2d at 1428. This purpose is not

---

[2] *Bolus v. Carnicella*, No. 4:15-CV-01062, 2020 WL 6531007, at *8 (M.D. Pa. Nov. 5, 2020).

implicated where, as here, the attorney's work product is directly at issue in this case and may be used against him rather than his clients.

Here, as DA Defendants articulate in their brief, a fair reading of the Powell Memo shows "he is engaged in an analysis of the criminal case by evaluating facts and witnesses in contemplation of the prosecution of the Plaintiff," and the Memo "was written during the pendency of a criminal action in which [DA Powell] was analyzing the viability of an active prosecution[.]" (Doc. 96 at 7). DA Powell's analysis of the evidence in and viability of the criminal prosecution of Plaintiff is directly at issue in this case. Plaintiff's remaining claims against DA Powell include malicious prosecution under 42 U.S.C. §1983. A key element related to that claim is whether DA Powell "acted maliciously or for a purpose other than bringing the plaintiff to justice" in initiating prosecution and continuing to prosecute Plaintiff in the underlying criminal case. For example, Plaintiff alleges in his amended complaint that DA Powell manufactured a false narrative in regard to Plaintiff, generated false evidence against him, and pressured a subordinate to continue prosecuting Plaintiff. (*See, e.g.,* Doc. 9 at 10). The Powell Memo sheds light on DA Powell's intent and motivations in continuing to pursue the criminal prosecution of Plaintiff. To be sure, DA Powell's mental impressions, conclusions, opinions, or legal theories contained in the Powell Memo go to

the heart of Plaintiff's claims against him. Therefore, these facts warrant application of the narrow exception to the work product doctrine for the information for which protection is sought is directly at issue.[3]

### B. Deliberative Process Privilege

The deliberative process privilege permits the government to withhold documents containing "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (citation omitted). "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *Id.* "It recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease[,] and the quality of administrative decisions would consequently suffer.'" *Id.* Like most privileges, the deliberative process privilege can be waived. "Where an authorized disclosure is voluntarily made to a non-[governmental] party, the government waives any claim that the information is exempt from disclosure under the deliberative process privilege." *Shell Oil Co. v. I.R.S.*, 772 F.Supp. 202, 211 (D. Del. 1991); *see also Fla. House of Representatives v. U.S. Dep't of Com.*, 961 F.2d 941, 946

---

[3] The court appreciates the parties' supplemental briefing on the issue of waiver of the work product doctrine but need not reach the issue since the court finds the above-articulated exception applies.

(11th Cir. 1992) (citing *Shell Oil*). However, the deliberative process privilege is not waived if "the disclosure was inadvertent, and the [government] [takes] reasonable steps in preventing and rectifying the disclosure." *Bayliss v. New Jersey State Police*, 622 F. App'x 182, 186 (3d Cir. 2015) (citing Fed. R. Evid. 502(b)).

      Here, even if the deliberative process privilege were to apply, DA Powell waived the privilege by voluntarily disclosing the Powell Memo. It is undisputed that DA Powell voluntarily disclosed the Powell Memo to Paul Lyon, a non-governmental third-party, when he attached the memorandum to an email to Mr. Lyon seeking public relations advice. DA Defendants do not allege this disclosure was inadvertent, nor that they took reasonable steps in preventing and rectifying the disclosure. In fact, DA Defendants do not respond whatsoever to Plaintiff's argument that the deliberative process privilege was waived. Thus, the court finds the deliberative process privilege does not prevent disclosure of the Powell Memo because, even if applicable, it was waived by voluntary disclosure.

## IV. CONCLUSION

In light of the foregoing, the court will **AFFIRM** Judge Mehalchick's discovery order requiring disclosure of the Powell Memo and **DENY** DA Defendants appeal thereof. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: April 25, 2023**
20-1911-06